1  Catherine Valerio Barrad (SBN 168897)
   cbarrad@sidley.com
2  Christine K. Son (SBN 223190)
   cson@sidley.com
3  J. P. Pecht (SBN 233708)
   SIDLEY AUSTIN LLP
4  555 West Fifth Street, Suite 4000    *E-filing*
   Los Angeles, California  90013-1010
5  Telephone: (213) 896-6000
   Facsimile: (213) 896-6600
6

7  Attorneys For Defendant
   Bayer Corporation
8

*FILED*

MAR 2 7 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

9              UNITED STATES DISTRICT COURT

10        FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                  SAN FRANCISCO DIVISION

12  JEANNE DIANE COLLINS, as          )   Case No. _____
    surviving statutory beneficiary for the  )
13  wrongful death of FLOYD COLLINS,  )
                                      )   **DEFENDANT BAYER**
14              Plaintiff,            )   **CORPORATION'S NOTICE OF**
                                      )   **REMOVAL UNDER**
15       v.                          )   **28 U.S.C. § 1441(b) (DIVERSITY)**
                                      )
16                                    )   State Action Filed:  Dec. 31, 2007
    BAYER CORPORATION, a              )
17  Pennsylvania corporation, aka, BAYER )   State Action Served: Feb. 28, 2008
    HEATLHCARE and BAYER AG ; and     )
18  MCKESSON CORPORATION, a           )
    Delaware Corporation ; JOHN DOES 1- )
19  100 and ABC CORPORATIONS 1-100,   )
                                      )
20                                    )
                                      )
21              Defendants.           )
                                      )
22

23       TO THE CLERK OF THE NORTHERN DISTRICT OF CALIFORNIA:

24       PLEASE TAKE NOTICE that defendant Bayer Corporation, through

25  undersigned counsel, removes this action from the California Superior Court, County

26  of San Francisco, to the United States District Court for the Northern District of

27  California pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, and states as follows in

28  support of this Notice of Removal:

*ORIGINAL*

1    1.   Complaint.  Plaintiff Jeanne Diane Collins filed this wrongful death

2   action in California state court as the surviving statutory beneficiary of Floyd Collins.

3   Plaintiff's Complaint asserts claims under theories of negligence, strict liability,

4   failure to warn, breach of express and implied warranties, intentional infliction of

5   emotional distress, fraud and misrepresentation, and unfair and untruthful business

6   practices under California Business & Professions Code §§ 17200 and 17500.  The

7   Complaint names as defendants Bayer Corporation, McKesson Corporation, one

8   hundred unknown parties designated by the fictitious name "Doe," and one hundred

9   unknown corporations designated by the fictitious name "ABC Corporation."

10   Plaintiff seeks unlimited economic damages as well as punitive damages.  Plaintiff's

11   allegations relate to the prescription pharmaceutical aprotinin injection, which has the

12   proprietary name Trasylol®.

13    2.   Removal is proper.  This case is properly removed to this Court pursuant

14   to 28 U.S.C. § 1441.  The procedural requirements for removal are satisfied and this

15   Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

16    3.   Stay motion to be filed promptly.  Bayer Corporation will shortly be

17   filing a motion to stay all proceedings in this matter pending a Multidistrict Litigation

18   ("MDL") consolidation ruling by the Judicial Panel on Multidistrict Litigation, which

19   heard argument on the matter on March 27, 2008.  This Court has already stayed other

20   Trasylol® matters currently pending in this district.  *Storer ex rel. Nitzberg* v. *Bayer*

21   *Corp.*, No. 4:07-cv-4399 (N.D. Cal. Mar. 10, 2008) (Docket Entry 46); *De Leon* v.

22   *Bayer Pharmaceutical Corp.*, No. 4:07-cv-6206 (N.D. Cal. Mar. 21, 2008) (Docket

23   Entry 18); *Minard* v. *Bayer Corp.*, No. 4:08-cv-739 (N.D. Cal. Mar. 21, 2008)

24   (Docket Entry 12).  Similarly, numerous courts nationwide have likewise stayed

25   Trasylol® matters pending the JPML's transfer decision.  *See Bakan* v. *Bayer Corp.*,

26   No. 8:07-cv-220 (M.D. Fla. Feb 14, 2008) (Docket Entry 32); *Burnette* v. *Bayer*

27   *Corp.*, No. 7:07-cv-2238 (N.D. Ala. Feb. 13, 2008) (Docket Entry 15); *Davis* v. *Bayer*

28

1  *Corp.*, No. 3:07-cv-115 (M.D. Tenn. Feb. 8, 2008) (Docket Entry 101); *Durkin* v.
2  *Bayer Corp.*, No. 1:07-cv-7162 (N.D. Ill. Feb. 6, 2008) (Docket Entries 19 and
3  20); *Fast* v. *Bayer Corp.*, No. 5:07-cv-82 (N.D. W. Va. Feb. 19, 2008) (Docket Entry
4  41); *Lanham* v. *Bayer Corp.*, No. 4:07-cv-1687 (S.D. Tex. Feb. 5, 2008) (Docket
5  Entry No. 62); *Morrill* v. *Bayer Pharmaceuticals Corp.*, No. 8:07-cv-819-T-27 (M.D.
6  Fla. Feb. 14, 2008) (Docket Entry 53); *O'Connor* v. *Bayer Corp.*, No. 3:07-cv-633
7  (S.D. Cal. Feb. 14, 2008) (Docket Entry 40); *Pesl* v. *Bayer Corp.*, No. 4:07-cv-2819
8  (S.D. Tex. Feb. 5, 2008) (Docket Entry 21); *Ware* v. *Bayer Corp.*, No. 5:07-cv-1305
9  (C.D. Cal. Feb. 13, 2008) (Docket Entry 14); *Wease* v. *Bayer Corp.*, No. 1:07-cv-1659
10  (N.D. Ga. Feb. 15, 2008) (Docket Entry 44); *Williams* v. *Bayer Corp.*, No. 1:07-cv-4
11  (M.D. Tenn. Feb. 15, 2008) (administrative closure, Docket Entry 75).  As with these
12  other matters, this case is likely to be transferred for pretrial proceedings to an MDL
13  court, and therefore a stay of proceedings pending MDL transfer would conserve
14  judicial resources.

15  **I.    THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE**
16  **SATISFIED.**

17      4.    Plaintiff's Complaint was served on Bayer Corporation on or after
18  February 28, 2008.  Accordingly, this Notice of Removal is timely under 28 U.S.C.
19  § 1446(b).  *See Murphy Bros., Inc.* v. *Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354
20  (1999) (30-day time period for removal runs from the date of formal service).

21      5.    Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, orders,
22  and other papers received by Bayer Corporation are attached as Exhibit A.  A copy of
23  Bayer Corporation's Answer, as filed in the Superior Court of the State of California,
24  County of San Francisco, is attached as Exhibit B.

25      6.    The Northern District of California, San Francisco Division, embraces
26  the county in which the state court action is now pending, and thus this Court is a
27  proper forum for this action under 28 U.S.C. §§ 84(a) and 1441(a).

28      7.    No previous application has been made for the relief requested in this

1    removal.

2        8.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is

3    being served on plaintiff's counsel and a copy is being filed with the Clerk of the

4    Superior Court of the State of California, County of San Francisco.

5        9.    If any question arises regarding the propriety of the removal of this

6    action, Bayer Corporation respectfully requests the opportunity to present a brief and

7    oral argument in support of the position that this case is removable.

8    **II.    REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT**
9    **MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.**

10       10.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C.

11   § 1332 because this is a civil action between citizens of different states in which the

12   amount in controversy exceeds $75,000, exclusive of costs and interest.

13       **A.    The Amount in Controversy Requirement Is Satisfied.**

14       11.    It is apparent from the face of the Complaint that the amount in

15   controversy in this case exceeds $75,000, exclusive of costs and interest.

16       12.    This wrongful death Complaint alleges that plaintiff's decedent, Floyd

17   Collins, was administered Trasylol® while undergoing cardiac surgery on November

18   28, 2001, and died as a result. Compl. ¶ 44. The Complaint alleges that as a result of

19   the administration of Trasylol®, Mr. Collins "began experiencing postoperative acute

20   renal failure shortly after his surgery," *id.* ¶ 46, "was forced to be put on dialysis, and

21   continued with dialysis treatments," *id.* ¶ 47, and his "health deteriorated rapidly"

22   until he died on December 23, 2001. *Id.* ¶¶ 44, 48. The Complaint further alleges that

23   plaintiff "suffered severe emotional distress, including but not limited to, depression,

24   fear of death, and nervousness." *Id.* ¶ 105. Mr. Collins allegedly required "reasonable

25   and necessary health care, attention and services, and . . . incurred medical, incidental,

26   and service expenses." *Id.* ¶ 49. The Complaint seeks unlimited compensatory and

27   punitive damages according to proof, in sums in excess of the $25,000 jurisdictional

28   limit of the Superior Court, *see id.* ¶¶ 1, 106, as well as restitution, disgorgement of

4

1  profits, and attorney fees. *See id.* at 17 ("wherefore" clause).

2       13.    When, as here, a complaint does not allege a specific amount of damages,
3  "the district court may consider whether it is 'facially apparent' from the complaint
4  that the jurisdictional amount is in controversy." *Singer* v. *State Farm Mut. Auto. Ins.*
5  *Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (citing *Allen* v. *R & H Oil & Gas Co.*, 63 F.3d
6  1326, 1335-36 (5th Cir. 1995)); *see also Simmons* v. *PCR Tech.*, 209 F. Supp. 2d
7  1029, 1031 (N.D. Cal. 2002) ("The district court may consider whether it is 'facially
8  apparent' from the complaint that the jurisdictional amount is in controversy."); *see*
9  *also Allison* v. *Security Benefit Life Ins. Co.*, 980 F.2d 1213, 1215 (8th Cir. 1992)
10 (punitive damages are properly considered in calculating the amount in controversy).

11      14.    This Court has recognized that a "complaint alleg[ing] wrongful
12 death . . . would *clearly establish* an amount in controversy in excess of $75,000."
13 *Corbelle* v. *Sanyo Elec. Trading Co.*, No. C-03-1509 EMC, 2003 WL 22682464, at *3
14 (N.D. Cal. Nov. 4, 2003) (emphasis added). Other courts likewise have routinely held
15 that wrongful death cases involve damages over $75,000. *Branson* v. *Medtronic, Inc.*,
16 No. 5:06-cv-332-Oc-10GRJ, 2007 WL 170094, at *5 (M.D. Fla. Jan. 18, 2007) ("the
17 claimed damages in a wrongful death case like this one would—with certainty—be far
18 in excess of $75,000.00"); *see also Knickerbocker* v. *Chrysler Corp.*, 728 F. Supp.
19 460, 463 (E.D. Mich. 1990) ("This being a wrongful death case, the amount in
20 controversy clearly exceeds $50,000."). Indeed, the Fifth Circuit has held, in a case
21 cited with approval by both the Ninth Circuit and this Court, that claims of the type
22 alleged here facially satisfy the jurisdictional minimum of 28 U.S.C. § 1332. *De*
23 *Aguilar* v. *Boeing Co.*, 11 F.3d 55, 57 (5th Cir. 1993) (finding it "facially apparent"
24 that claims for wrongful death, loss of companionship, and funeral expenses satisfied
25 jurisdictional minimum for purposes of removal), cited with approval in *Kroske* v.
26 *U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005), and *Lamke*, 319 F. Supp. 2d at
27 1032; *see also Singer*, 116 F.3d at 377 ("The Fifth Circuit has described an

28

5

1    appropriate procedure for determining the amount in controversy on removal.").

2    15.    Where liability is established, wrongful death cases in San Francisco

3    County likewise frequently result in verdicts of substantially more than $75,000.[1]

4    *E.g.*, *Ivance* v. *Rich-Tex Inc.*, 2007 WL 959717, 14 Trials Digest 10th 1 (Mar. 2007)

5    ($868,788 in wrongful death products liability case); *Libbee* v. *Raybestos*, 1999 WL

6    732773, 21 Trials Digest 3d 31 (Apr. 1999) ($250,000 in wrongful death products

7    liability case); *Petrini* v. *Mohasco Corp.*, 1998 WL 1054767, 17 Trials Digest 3d 31

8    (Dec. 1998) ($995,432 in wrongful death products liability case); *see also Ethier* v.

9    *Poindexter*, 2006 WL 4542552, JVR No. 461,849 (Mar. 2006) ($253,901 in wrongful

10   death medical malpractice case); *Huey* v. *Carteron*, 1997 WL 465515, 33 Trials

11   Digest 2d 64 (May 1997) ($239,000 in wrongful death medical malpractice case); *Sze*

12   v. *Fay*, 1995 WL 866198, 19 Trials Digest 2d 70 (Nov. 1995) ($321,300 in wrongful

13   death medical malpractice case).

14   16.    Thus, based on the allegations in the Complaint, it is facially apparent

15   that the amount in controversy substantially exceeds $75,000.

16   **B.    Complete Diversity of Citizenship Exists Between the Parties
       Properly Joined and Served.**

17

18   17.    Complete diversity exists between the properly joined parties. Plaintiff is

19   a citizen of Arizona for federal jurisdictional purposes; no defendant is a citizen of

20   Arizona; and no party properly joined as a defendant is a citizen of California.

21   18.    Upon information and belief, Mr. Collins was a citizen of Arizona at the

22   time of his death. *See Kanter* v. *Warner-Lambert Co.*, 265 F.3d 853, 857-58 (9th Cir.

23   2001) ("For purposes of federal diversity jurisdiction 'citizenship' and 'domicile' are

24   synonymous.") (quoting *Hendry* v. *Masonite Corp.*, 455 F.2d 955 (5th Cir. 1972));

25   *Kantor* v. *Wellesley Galleries, Ldt.*, 704 F.2d 1088, 1090 (9th Cir. 1983) ("To show

26   state citizenship for diversity purposes under federal common law a party must (1) be

27   _____
     [1]  *See Kroske*, 432 F.3d at 980 ("In determining the amount in controversy, the district court
28   properly considered . . . damage awards in similar [cases] . . . .").

1  a citizen of the United States, and (2) be domiciled in the state."). Accordingly,

2  notwithstanding her allegation to the contrary, *see* Compl. ¶ 2, for purposes of federal

3  jurisdictional analysis Jeanne Diane Collins in her capacity as statutory beneficiary of

4  Floyd Collins is likewise a citizen of Arizona. *See* 28 U.S.C. § 1332(c)(2) ("the legal

5  representative of the estate of a decedent shall be deemed to be a citizen only of the

6  same State as the decedent").

7      19.    Bayer Corporation is, and was when this action was filed, an Indiana

8  corporation with its principal place of business in Pennsylvania. *See* Compl. ¶ 3.

9  Bayer Corporation therefore is, and was when this action was filed, a citizen of

10 Indiana and Pennsylvania. 28 U.S.C. § 1332(c) ("a corporation shall be deemed to be

11 a citizen of any State by which it has been incorporated and of the State where it has

12 its principal place of business"). Because Plaintiff is not a citizen of Indiana or

13 Pennsylvania, complete diversity of citizenship exists between Plaintiff and defendant

14 Bayer Corporation.

15     20.    Two other entities, "Bayer Healthcare" and Bayer AG, are not named as

16 defendants, yet the Complaint seems to include allegations directed to those two

17 entities.[2] Neither of these entities has seen served with process in this action. At any

18 rate, as discussed below, neither of these entities shares citizenship with Plaintiff.

19         (a)    Bayer HealthCare Pharmaceuticals Inc. (incorrectly identified in

20 the Complaint as "Bayer Healthcare") is the successor in interest to Bayer

21 Pharmaceuticals Corporation, with which it merged on January 1, 2008. Bayer

22 HealthCare Pharmaceuticals Inc. is, and was when this action was filed, a Delaware

23 corporation with its principal place of business in New Jersey. *See* Exhibit C. Bayer

24 HealthCare Pharmaceuticals Inc. therefore is, and was when this action was filed, a

25

26 ---
[2] The caption of the Complaint refers to "Bayer Healthcare" and Bayer AG as aliases of
Bayer Corporation, rather than as defendants themselves. *See* Compl., caption ("BAYER

27 CORPORATION, a Pennsylvania corporation, aka, BAYER HEALTHCARE and BAYER
AG"). The body of the Complaint, on the other hand, seems to suggest that those two

28 entities are treated as separate defendants. *See id.* ¶¶ 4-5.

1  citizen of Delaware and New Jersey. Thus, even if Bayer HealthCare Pharmaceuticals

2  Inc. had been properly named as a defendant to this action (it has not), its presence

3  would not affect the complete diversity of citizenship between plaintiff and the

4  properly joined defendants, because Plaintiff is not a citizen of either of those states.

5         (b)    Bayer AG is, and was at the time of the filing of this action, a

6  German corporation with its principal place of business in Leverkusen, Germany.

7  *See* Compl. ¶ 5. Bayer AG therefore is, and was at the time of the filing of this action,

8  a citizen of Germany. 28 U.S.C. § 1332(a)(2). Thus, even if Bayer AG were properly

9  a defendant to this action, which it is not, its presence would not affect the complete

10  diversity of citizenship between plaintiff and the properly joined defendants.

11      21.    The citizenship of the fictional "Doe" and "ABC" defendants is

12  disregarded for purposes of removal jurisdiction. 28 U.S.C. § 1441(a).

13      **C.**    **Defendant McKesson Is Fraudulently Joined, and Its Citizenship**

14              **Should Therefore Be Disregarded.**

15      22.    Plaintiff's Complaint alleges that defendant McKesson Corporation

16  ("McKesson") distribute[d] Trasylol®. Compl. ¶ 6. Upon information and belief,

17  defendant McKesson is, and was when this action was filed, a Delaware corporation

18  with its principal place of business in California.[3] *See id.* McKesson therefore is, and

19  was at the time of the filing of this action, a citizen of Delaware and California. Thus

20  its citizenship is diverse from plaintiff's Arizona citizenship.

21      23.    Further, McKesson's California citizenship should not be considered for

22  diversity jurisdiction purposes. McKesson is fraudulently joined, because "the

23  plaintiff fails to state a cause of action against [the] resident defendant." *McCabe* v.

24  *Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987); *see Charlin* v. *Allstate Ins.*

25  *Co.*, 19 F. Supp. 2d 1137, 1140 (C.D. Cal. 1998) ("A joinder is fraudulent if there is

26  no intention to get a joint judgment, and there is no colorable ground for so

27

28  [3]  McKesson has submitted a consent to this removal as attached in Exhibit I.

1  claiming."). *Accord United Computer Systems, Inc.* v. *AT&T Corp.*, 298 F.3d 756,
2  761 (9th Cir. 2002) (same); *In re PPA Prod. Liab. Litig.*, MDL No. 1407, Docket No.
3  C02-423R, slip op. at 3 (W.D. Wash. Nov. 27, 2002) (Ex. D) (denying plaintiffs'
4  motion to remand after finding resident retailer fraudulently joined). Plaintiff has
5  failed to allege any colorable factual basis for the claims asserted against McKesson,
6  and, as pleaded, there is no legal basis for plaintiff's claims against McKesson.

7  ## 1. *There is no factual basis for the claims against McKesson.*

8  24.  Plaintiff's Complaint fails to make sufficient material allegations against
9  McKesson. *See, e.g., TPS Utilicom Services, Inc.* v. *AT&T Corp.*, 223 F. Supp. 2d
10  1089, 1094 (C.D. Cal. 2002) (denying remand because of insufficient factual
11  allegations directed at the resident defendant); *Brown* v. *Allstate Ins. Co.*, 17 F. Supp.
12  2d 1134, 1137 (S.D. Cal. 1998) (finding in-state defendants fraudulently joined where
13  "no material allegations against [the in-state defendants] are made").

14  25.  Plaintiff has made only broad, conclusory assertions regarding McKesson
15  in combination with Bayer Corporation. *See, e.g.,* Compl. ¶ 24 ("At all times
16  pertinent, Defendant McKesson . . . was privy to all the facts and research known to
17  Defendants Bayer before Trasylol was approved, and thereafter."); *id.* ¶ 26
18  ("[McKesson] is equally liable for the acts of Defendants BAYER, and will therefore,
19  be included in the general references to acts of 'Defendants' herein."). Such
20  allegations are not sufficient to state a factual basis for a claim against McKesson. *See*
21  *Lewis* v. *Time Inc.*, 83 F.R.D. 455, 464 (C.D. Cal. 1979), *aff'd*, 710 F.2d 549 (9th Cir.
22  1983) ("broad averments are suspect on . . . fraudulent joinder grounds"). Indeed,
23  because McKesson did not manufacture or design Trasylol®, most of the allegations
24  against "Defendants" generally cannot possibly apply to McKesson.[4]

25

26  ---
[4]  *See, e.g.,* Compl. ¶ 53(A) ("Defendants failed to use ordinary care in designing, testing,
27  and manufacturing Trasylol"); *id.* ¶ 52 (similar); *id.* ¶ 59 (alleging that "Defendants
manufactured Trasylol"); *id.* ¶ 68 (alleging that "Defendants" were "in the business of
28  manufacturing, promoting, advertising, selling and distributing Trasylol"); *id.* ¶ 83 (alleging

1    26.    In fact, the Complaint contains no allegations that McKesson made *any*
2  representations or warranties to plaintiff, to plaintiff's decedent, or to any prescribing
3  doctor, or that plaintiff, her decedent, or any doctor relied on any representations or
4  warranties by McKesson. Indeed, all allegations in each of Plaintiff's ten counts are
5  directed to "Defendants" generically. *See* Compl. ¶¶ 51-106. Accordingly, Plaintiff
6  has failed to meet the minimal pleading requirements to state a claim against
7  McKesson. *See, e.g., Taylor AG Industries* v. *Pure-Gro*, 54 F.3d 555, 563 (9th Cir.
8  1995) (dismissing express warranty claim against distributor due to plaintiffs' failure
9  to identify any statements made by the distributor that were inconsistent with or went
10  beyond either the product labels or the Product Guide provided by manufacturer). *See*
11  *also Cox* v. *Depuy Motech, Inc.*, 2000 WL 1160486, at *5 (S.D. Cal. 2000) (causation
12  is an essential element of strict liability and negligence claims); *Keith* v. *Buchanan*,
13  173 Cal. App. 3d 13, 25 (1985) (actual reliance is an element of implied warranty
14  claim); *B.L.M.* v. *Sabo & Deitsch*, 55 Cal. App. 4th 823, 834 (1997) (to state a claim
15  of negligent misrepresentation, plaintiff must identify the alleged misrepresentation).
16  Similarly, Plaintiff has not identified any particular "extreme and outrageous conduct"
17  by McKesson that "actual[ly] and proximate[ly] cause[d]" the alleged emotional
18  distress. *See Davidson* v. *City of Westminster*, 32 Cal. 3d 197, 209 (Cal. 1982).

19    27.    Plaintiff cannot cure these deficiencies by simply relying on allegations
20  directed toward "Defendants" generally. *See In re PPA*, MDL No. 1407, slip op. at 5
21  (Ex. D) (allegations directed to "defendants" or "all defendants" insufficient).

22    28.    The general allegations that the defendants collectively knew or had
23  reason to know of the alleged risks associated with the use of Trasylol® are
24  particularly deficient with respect to the claims against McKesson, because the
25  conclusory allegations are undermined and contradicted by the more specific

26  _____

27  that Trasylol® was "designed, tested, manufactured, distributed, promoted and sold by the
   Defendants"); *id.* ¶ 88 (same); *id.* ¶ 106 (alleging that "Defendants" "continued to design,
28  manufacture, market, and sell Trasylol").

1  allegations of Bayer Corporation's alleged concealment and misrepresentation of the

2  same information that McKesson is charged with having. *Compare* Compl. ¶ 34

3  ("Bayer knew of this data and failed to disclose this data") *with id.* ¶ 25 ("Defendant

4  MCKESSON, knew or should have known, of the facts and research regarding

5  Trasylol"); *see also In re PPA*, slip op. at 7 (Ex. D) (allegations that "manufacturer

6  defendants concealed material facts regarding PPA through product packaging,

7  labeling, advertising, promotional campaigns and materials, and other methods . . .

8  directly undermines and contradicts the idea that [the resident retail defendant] had

9  knowledge or reason to know of alleged defects."). The specific allegations that

10  Bayer Corporation concealed and misrepresented the alleged risks of Trasylol®

11  foreclose the inference that McKesson, a wholesale distributor, had knowledge of that

12  which was allegedly concealed. It is well established under California law that while

13  inconsistent theories of recovery are permitted, "a pleader cannot blow hot and cold as

14  to the facts positively stated." *See Manti* v. *Gunari*, 5 Cal. App. 3d 442, 449 (1970);

15  *see also Baisden* v. *Bayer Corp.*, 275 F. Supp. 2d 759, 762 (S.D. W. Va. 2003)

16  (finding fraudulent joinder where the impossibility of the claim against the resident

17  defendant was "implicit in contradictory allegations: (1) defendant manufacturer hid

18  the information that (2) non-diverse doctor or pharmacist knew or should have

19  known").[5]

20

21  ---

[5] *See also Omobude* v. *Merck & Co.*, Civ. No. 3:03CV528LN, slip op. at 5 (S.D. Miss. Oct.

22  3, 2003) (Ex. E) (in-state physician fraudulently joined where "plaintiff has specifically alleged facts from which one would necessarily infer that the defendant in question would

23  not have known information otherwise alleged to have been misrepresented or concealed from him."); *Baisden*, 275 F. Supp. 2d at 763 (physician defendant fraudulently joined where

24  the "gravamen of the malpractice case against [him] is his failure to know what allegedly was deliberately hidden"); *Louis* v. *Wyeth-Ayerst Pharm., Inc.*, No. 5:00CV102LN, slip op.

25  at 4-5 (S.D. Miss. Sep. 25, 2000) (Ex. F) (allegations of "manufacturers' intentional

26  concealment of the true risks of the drug(s), coupled with dissemination through various media of false and misleading information of the safety of the drug(s) at issue, belied any

27  suggestions of knowledge, or reason to know by the resident defendants."); *In re Rezulin*

28  *Prod. Liab. Litig.*, 133 F. Supp. 2d 272, 290 (S.D.N.Y. 2001) (resident retail pharmacies

1

## 2.    *There is no legal basis for the claims against McKesson.*

2    29.    In fact, even if Plaintiff had directed allegations at McKesson, there

3    remains no legal basis for any of the claims asserted against McKesson, because each

4    is based on an alleged failure to warn and premised on a non-existent duty to warn.

5    Under California's learned intermediary doctrine, the duty to warn about a drug's

6    risks runs from the manufacturer to the physician (the "learned intermediary"), and

7    then from the physician to the patient. *See Brown* v. *Superior Court*, 44 Cal. 3d 1049,

8    1061-1062 n.9 (1988); *Carlin* v. *Superior Court*, 13 Cal. 4th 1104, 1116 (1996).

9    30.    Under the learned intermediary doctrine, it is the physician alone who is

10    charged with prescribing the appropriate drug and communicating the relevant risks to

11    the patient. *See Brown*, 44 Cal. 3d at 1061-62. That is because the physician is in the

12    best position to determine whether a patient should take a prescription drug; imposing

13    a duty on others to warn patients would threaten to undermine reliance on the

14    physician's informed judgment. For this reason, courts have rejected imposing

15    liability on distributors like McKesson for failure to warn of the risk of a prescribed

16    drug. *See, e.g., Barlow* v. *Warner-Lambert Co.*, Case No. CV 03 1647, slip op. at 2

17    (C.D. Cal. April 28, 2003) (Ex. G) (finding "no possibility that plaintiffs could prove a

18    cause of action against McKesson, an entity which distributed this FDA-approved

19    medication to pharmacists in California," and denying motion to remand); *Skinner* v.

20    *Warner-Lambert Co.*, Case No. CV 03 1 643, 2003 WL 25598915, *1 (C.D. Cal.

21    April 28, 2003) (same); *see also Murphy* v. *E.R. Squibb & Sons, Inc.*, 40 Cal. 3d 672,

22    680-81 (1985) (under the learned intermediary doctrine, retail pharmacies have no

23    general duty to warn consumers of effects of prescription drugs); *In re Baycol Prods.*

24    *Litig.*, MDL No. 1431, Case No. 02-139, slip op. at 3-4 (D. Minn. May 24, 2002) (Ex.

25    H) (deeming retail distributor of prescription drugs fraudulently joined); *Schaerrer* v.

26

27    facing failure to warn claims fraudulently joined where "the theory underlying the
complaints [was] that the manufacturer defendants hid the dangers of Rezulin from plaintiffs,

28    the public, physicians, distributors and pharmacist—indeed from everyone").

12

1  *Stewart's Plaza Pharmacy, Inc.*, 79 P.3d 922, 929 (Utah 2003) (declining to extend
2  duty to warn to retail distributor of prescription drug; "Unlike the marketing system
3  for most other products, the distribution system for prescription drugs is highly
4  restricted.").

5      31.   Moreover, it is undisputed that through a collaborative process the FDA
6  and Bayer Corporation prepared the information to be included with Trasylol®, with
7  the FDA having final approval authority over the information that could be presented.
8  Once the FDA has determined the form and content of the information, it is a violation
9  of federal law to deviate from that prescribed information, including by augmenting it.
10 *See* 21 U.S.C. § 331(k) (prohibiting drug manufacturers and distributors from causing
11 the "alteration, mutilation, destruction, obliteration, or removal of the whole or any
12 part of the labeling" of an FDA-approved drug); *Brown*, 44 Cal. 3d at 1069 n.12 (FDA
13 regulates the testing, manufacturing, and marketing of drugs, including the content of
14 their warning labels); *see also* FDA, Final Rule, Requirements on Content & Format
15 of Labeling for Human Prescription Drug and Biological Products, 71 Fed. Reg. 3922,
16 3834-35 (Jan. 24, 2006) ("FDA carefully controls the content of labeling for a
17 prescription drug . . . [and] continuously works to evaluate the latest available
18 scientific information to monitor the safety of products and to incorporate information
19 into the product's labeling when appropriate. . . . [T]he determination whether
20 labeling revisions are necessary is, in the end, squarely and solely FDA's."). Thus,
21 McKesson is not permitted under federal law to change the FDA-approved labeling
22 accompanying prescription drugs that it distributes.[6] No duty can be found where
23 such a duty would require a party to violate the law to fulfill it. Accordingly,
24 McKesson had neither the authority nor the duty to offer the warnings that form the

25 
26 
27 
28 

---

[6] *See* 21 C.F.R. § 203.50 (governing standards for wholesale distribution); 21 C.F.R. §
201.59 (prescription medicines may only be released to distributors if the labeling complies
with federal regulations and is approved by FDA); 21 U.S.C. §§ 331, 352 (federal law
providing for criminal penalties, fines, and other enforcement actions against those who
mislabel or alter FDA-approved labeling).

1  basis for each of Plaintiff's claims. Each and every claim against McKesson therefore
2  fails, demonstrating that McKesson has been fraudulently joined.

3      32.    Further, plaintiff's claims fail for the following additional reasons:

4      33.    <u>Strict Liability (Design Defect and Failure to Warn) Claims</u>.  Plaintiff
5  cannot state a strict liability claim against McKesson, whether under a failure to warn
6  or a design defect theory.  Under California law, a distributor has no duty to warn the
7  ultimate consumer when there is no effective way to convey the warning. *See Persons*
8  v. *Salomon North America, Inc.*, 217 Cal. App. 3d 168, 178 (1990).  As shown above,
9  McKesson—a mere distributor of Trasylol®—had no authority to change the
10 product's labeling. It necessarily follows that McKesson had no effective means to
11 convey any different or additional warnings. Plaintiff therefore cannot state a failure
12 to warn claim against McKesson. Plaintiff's strict liability design defect claim, *see*
13 Compl. ¶¶ 62-63, likewise fails, because such a claim is not cognizable in California
14 law. *See Brown*, 44 Cal. 3d at 1061 ("a drug manufacturer's liability for a defectively
15 designed drug should not be measured by the standards of strict liability").  In any
16 event, McKesson neither designed nor manufactured Trasylol®.

17     34.    <u>Fraud and Misrepresentation</u>.  Under California law, to prevail on claims
18 of fraud or misrepresentation, a plaintiff must plead and prove "how, when, where, to
19 whom, and by what means the representations were tendered." *Stansfield* v. *Starkey,*
20 220 Cal. App. 3d 59, 73-74 (1990).  Additionally, when such claims are levied against
21 more than one defendant, the plaintiff must identify the particular statements made by
22 each defendant. *See Tarmann* v. *State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153,
23 157 (1991); *Schneider* v. *Traweek*, No. CV88-0905, 1990 U.S. Dist. LEXIS 15563, at
24 *18 (C.D. Cal. 1990).  Plaintiff's Complaint does not allege any specific
25 misrepresentation by McKesson, nor that McKesson made any purported statements
26 intentionally or negligently.  Consequently, Plaintiff's fraud and misrepresentation
27 claims against McKesson, Compl. ¶¶ 69-70, 76-79, fail as a matter of law.

28

1    35.    Negligence.  Plaintiff maintains that "Defendants" were negligent in
2  failing to provide adequate warnings about the risks associated with Trasylol®, failing
3  adequately to design, test, manufacture, and inspect Trasylol®, and failing to comply
4  with various regulatory requirements.  Compl. ¶¶ 52-53, 56.  McKesson could not
5  possibly be liable under any of these theories because, as discussed above, it was a
6  distributor that had no duty with regard to labeling, manufacturing, or designing
7  Trasylol®, and indeed, it could not have lawfully changed the product's warnings.
8  Accordingly, plaintiff's negligence claim against McKesson fails.

9    36.    Express and Implied Warranty.  Plaintiff's express warranty claim
10  against McKesson fails because plaintiff has not alleged the terms of what, if any,
11  express warranty about Trasylol® McKesson allegedly made.  *See* Compl. ¶ 84
12  (making generic allegations about the advertising and marketing of "Defendants");
13  *Williams* v. *Beechnut Nutrition Corp.,* 185 Cal. App. 3d 135, 142 (1986) (express
14  warranty claim requires an allegation of "the exact terms of the warranty").  Plaintiff's
15  implied warranty claim against McKesson fails because plaintiff does not allege that
16  she or the decedent was in vertical privity with McKesson, as California law requires.
17  *See Fieldstone Co.* v. *Briggs Plumbing Prods., Inc.,* 54 Cal. App. 4th 357, 371 (1997).

18    37.    Consumer Fraud.  Plaintiff's consumer fraud claims—like all of her other
19  claims—depend upon an alleged inadequacy of warnings.  *See, e.g.*, Compl. ¶ 100(A)
20  (seeking relief due to allegedly false "represent[ation] . . . that Trasylol was safe, fit
21  and effective for human consumption, knowing that said representations were false,
22  and concealing . . . that Trasylol has a serious propensity to cause injuries to users").
23  As discussed above, McKesson had no involvement with Trasylol® labeling and thus
24  cannot be held liable for inadequate warnings under these statutes or otherwise.  *See*
25  *supra* ¶¶ 33, 35; *see also, e.g.*, 21 U.S.C. § 331(k) (forbidding distributors from
26  altering labeling received from manufacturer).

27    38.    Intentional Infliction of Emotional Distress.  Plaintiff's intentional
28

1  infliction of emotional distress claim likewise depends upon an alleged failure by
2  McKesson to provide adequate warnings. Compl. ¶¶ 101-104. As explained above,
3  McKesson had no power over Trasylol®'s FDA-approved labeling. Thus, there is no
4  reasonable possibility that McKesson's failure to change what it had no legal authority
5  to alter could be deemed "extreme and outrageous conduct," and it could not have
6  been the actual and proximate cause of the alleged emotional injuries. *See Davidson*,
7  32 Cal. 3d at 209. Accordingly, Plaintiff's intentional infliction of emotional distress
8  claim against McKesson—like each and every other claim against the distributor—
9  stands no reasonable chance of success. These facially meritless claims have been
10 brought against McKesson solely in an attempt to defeat this Court's jurisdiction. *See,*
11 *e.g., Barlow*, slip op. at 2 (Ex. G); *Skinner*, 2003 WL 25598915 at *1.

12 ### 3. *Complete diversity exists.*

13 39. Because there is complete diversity of citizenship between the properly
14 joined parties, this Court possesses jurisdiction over this matter pursuant to 28 U.S.C.
15 § 1332. Further, as Bayer Corporation will show in the forthcoming motion to stay,
16 an immediate stay of proceedings pending likely MDL transfer is prudent and will
17 conserve judicial resources.

18 WHEREFORE, Defendant Bayer Corporation removes this action from the
19 Superior Court of the State of California, County of San Francisco, to this Court
20 pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

21 Dated: March 26, 2008

SIDLEY AUSTIN LLP
Catherine Valerio Barrad
Christine K. Son
J. P. Pecht

By: J. P. Pecht

Attorneys for Defendant Bayer
Corporation

16

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
BAYER CORPORATION, a Pennsylvania corporation, aka, BAYER
HEALTHCARE and BAYER AG; and MCKESSON CORPORATION,
a Delaware corporation; JOHN DOES 1-100 (continued, p.2)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
JEANNE DIANE COLLINS, as surviving statutory beneficiary for the
wrongful death of FLOYD COLLINS

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>San Francisco County Superior Court<br>400 McAllister Street<br>San Francisco, CA 94102 | CASE NUMBER:<br>*(Número del Caso):*  CGC-07-470556 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Robert F. Clarke, Esq. / Lowell W. Finson, Esq.
Phillips & Associates, 3030 N Third St, Ste 1100, Phoenix, AZ 850012; Tel: (602) 258-8900 ext. 295

| DATE: FEB 1 5 2008<br>*(Fecha)* | Gordon Park-Li | Clerk, by ____ D. STEPPE | , Deputy<br>*(Adjunto)* |
|---|---|---|---|
| | | *(Secretario)* | |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Bayer Corporation, a Pennsylvania corporation, aka, Bayer Healthcare

under: ☒ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 2/8/08

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. January 1, 2004] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>American LegalNet, Inc. | www.USCourtForms.com |
|---|---|---|---|

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Collins v. Bayer Corporation, et al. | CGC-07-470556 |

### INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

and ABC CORPORATIONS 1-100

Page _____ of _____

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

American LegalNet, Inc.
www.FormsWorkflow.com

# Alternative Dispute Resolution (ADR) Program Information Package

# Alternatives to Trial

## There are other ways to resolve a civil dispute.

The plaintiff must serve a copy of the ADR information package
on each defendant along with the complaint. (CRC 201.9(c))

### Superior Court of California
### County of San Francisco

# Introduction

**Did you know that most civil lawsuits settle without a trial?**

**And did you know that there are a number of ways to resolve civil disputes without having to sue somebody?**

**These alternatives to a lawsuit are known as alternative dispute resolutions (ADR). The most common forms of ADR are mediation, arbitration and case evaluation. There are a number of other kinds of ADR as well.**

**In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.**

**ADR is not new. ADR is available in many communities through dispute resolution programs and private neutrals.**

## Advantages of ADR

**ADR can have a number of advantages over a lawsuit.**

- *ADR can save time.* A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- *ADR can save money.* Court costs, attorneys fees, and expert fees can be saved.

- *ADR can be cooperative.* This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- *ADR can reduce stress.* There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.

- *ADR encourages participation.* The parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- *ADR is flexible.* The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.

- *ADR can be more satisfying.* For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute, instead of filing a lawsuit. Even when a lawsuit has been filed, the court can refer the dispute to a neutral before the parties' position harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

## Disadvantages of ADR

ADR may not be suitable for every dispute.

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

- There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

- The neutral may charge a fee for his or her services.

- If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

- Lawsuits must be brought within specified periods of time, known as statutes of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

## ALTERNATIVE DISPUTE RESOLUTION PROGRAMS
## Of the San Francisco Superior Court

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to a mandatory settlement conference or trial." (Superior Court Local Rule 4)

This guide is designed to assist attorneys, their clients and self-represented litigants in complying with San Francisco Superior Court's alternative dispute resolution ("ADR") policy.  Attorneys are encouraged to share this guide with clients.  By making informed choices about dispute resolution alternatives, attorneys, their clients and self-represented litigants may achieve a more satisfying resolution of civil disputes.

The San Francisco Superior Court currently offers three ADR programs for general civil matters; each program is described below:

   1)   Judicial Arbitration
   2)   Mediation
   3)   The Early Settlement Program (ESP) in conjunction with the
        San Francisco Bar Association.

### JUDICIAL ARBITRATION

#### Description

In arbitration, a neutral "arbitrator" presides at a hearing where the parties present evidence through exhibits and testimony.  The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.  When the Court orders a case to arbitration it is called judicial arbitration.  The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.

Although not currently a part of the Court's ADR program, civil disputes may also be resolved through private arbitration.  Here, the parties


voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

### Operation

Pursuant to CCP 1141.11 and Local Rule 4; all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. A case is ordered to arbitration after the Case Management Conference. An arbitrator is chosen from the Court's Arbitration Panel. Most cases ordered to arbitration are also ordered to a pre-arbitration settlement conference. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is <u>not</u> binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a court trial within 30 days after the arbitrator's award has been filed.

### Cost

There is no cost to the parties for judicial arbitration or for the pre-arbitration settlement conference.

## MEDIATION

### Description

Mediation is a voluntary, flexible, and confidential process in which a neutral third party "mediator" facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of the dispute after exploring the significant interests, needs, and priorities of the parties in light of relevant evidence and the law.

Although there are different styles and approaches to mediation, most mediations begin with presentations of each side's view of the case. The mediator's role is to assist the parties in communicating with each other, expressing their interests, understanding the interests of opposing parties, recognizing areas of agreement and generating options for resolution. Through questions, the mediator aids each party in assessing the strengths and weaknesses of their position.

A mediator does not propose a judgment or provide an evaluation of the merits and value of the case. Many attorneys and litigants find that mediation's emphasis on cooperative dispute resolution produces more satisfactory and enduring resolutions. Mediation's non-adversarial approach is particularly effective in disputes in which the parties have a continuing relationship, where there are multiple parties, where equitable relief is sought, or where strong personal feelings exist.

### Operation

San Francisco Superior Court Local Court Rule 4 **provides three different voluntary mediation programs** for civil disputes. An appropriate program is available for all civil cases, regardless of the type of action or type of relief sought.

To help litigants and attorneys identify qualified mediators, the Superior Court maintains a list of mediation providers whose training and experience have been reviewed and approved by the Court. The list of court approved mediation providers can be found at www.sfgov.org/courts. Litigants are not limited to mediators on the court list and may select any mediator agreed upon by all parties. A mediation provider need not be an attorney.

Local Rule 4.2 D allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate within 240 days from the date the complaint is filed. If settlement is not reached through mediation, a case proceeds to trial as scheduled.

### Private Mediation

The Private Mediation program accommodates cases that wish to participate in private mediation to fulfill the court's alternative dispute resolution requirement. The parties select a mediator, panel of mediators or mediation program of their choice to conduct the mediation. The cost of mediation is borne by the parties equally unless the parties agree otherwise.

Parties in civil cases that have not been ordered to arbitration may consent to private mediation at any point before trial. Parties willing to submit a matter to private mediation should indicate this preference on the Stipulation to Alternative Dispute Resolution form or the Case Management Statement (CM-110). Both forms are attached to this packet.


### *Mediation Services of the Bar Association of San Francisco*

The Mediation Services is a coordinated effort of the San Francisco
Superior Court and The Bar Association of San Francisco (BASF) in which
a court approved mediator provides three hours of mediation at no charge
to the parties. It is designed to afford civil litigants the opportunity to
engage in early mediation of a case shortly after filing the complaint, in an
effort to resolve the matter before substantial funds are expended on the
litigation process. Although the goal of the program is to provide the
service at the outset of the litigation, the program may be utilized at
anytime throughout the litigation process.

The mediators participating in the program have been pre-approved by the
court pursuant to strict educational and experience requirements.

After the filing of the signed Stipulation to Alternative Dispute Resolution
form included in this ADR package the parties will be contacted by BASF.
Upon payment of the $200 per party administration fee, parties select a
specific mediator from the list of court approved mediation providers. The
hourly mediator fee beyond the first three hours will vary depending on the
mediator selected. Waiver of the administrative fee based on financial
hardship is available.

A copy of the Mediation Services rules can be found on the BASF website
at www.sfbar.org, or you may call BASF at 415-782-9000.

### *Judicial Mediation*

The Judicial Mediation program is designed to provide early mediation of
complex cases by volunteer judges of the San Francisco Superior Court.
Cases considered for the program include construction defect, employment
discrimination, professional malpractice, insurance coverage, toxic torts
and industrial accidents.

Parties interested in judicial mediation should file the Stipulation to
Alternative Dispute Resolution form attached to this packet indicating a joint
request for inclusion in the program. A preference for a specific judge may
be indicated. The court Alternative Dispute Resolution Coordinator will
coordinate assignment of cases that qualify for the program.


### Cost

Generally, the cost of Private Mediation ranges from $200 per hour to $400 per hour and is shared equally by the parties. Many mediators are willing to adjust their fees depending upon the income and resources of the parties. Any party who meets certain eligibility requirements may ask the court to appoint a mediator to serve at no cost to the parties.

The Mediation Services of the Bar Association of San Francisco provides three hours of mediation time at no cost with a $200 per party administrative fee.

There is no charge for participation in the Judicial Mediation program.

## EARLY SETTLEMENT PROGRAM

### Description

The Bar Association of San Francisco, in cooperation with the Court, offers an Early Settlement Program ("ESP") as part of the Court's settlement conference calendar. The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of the dispute. The two-member volunteer attorney panel reflects a balance between plaintiff and defense attorneys with at least 10 years of trial experience.

As in mediation, there is no set format for the settlement conference. A conference typically begins with a brief meeting with all parties and counsel, in which each is given an opportunity to make an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of the case. The Early Settlement Conference is considered a "quasi-judicial" proceeding and, therefore, is not entitled to the statutory confidentiality protections afforded to mediation.

### Operation

Civil cases enter the ESP either voluntarily or through assignment by the Court. Parties who wish to choose the early settlement process should indicate this preference on the status and setting conference statement.

If a matter is assigned to the ESP by the Court, parties may consult the ESP program materials accompanying the "Notice of the Early Settlement Conference" for information regarding removal from the program.

Participants are notified of their ESP conference date approximately 4 months prior to trial. The settlement conference is typically held 2 to 3 months prior to the trial date. The Bar Association's ESP Coordinator informs the participants of names of the panel members and location of the settlement conference approximately 2 weeks prior to the conference date.

Local Rule 4.3 sets out the requirements of the ESP. All parties to a case assigned to the ESP are required to submit a settlement conference statement prior to the conference. All parties, attorneys who will try the case, and insurance representatives with settlement authority are required to attend the settlement conference. If settlement is not reached through the conference, the case proceeds to trial as scheduled.

### Cost

All parties must submit a $250 generally non-refundable administrative fee to the Bar Association of San Francisco. Parties who meet certain eligibility requirements may request a fee waiver. For more information, please contact the ESP Coordinator at (415) 782-9000 ext. 8717.

* * * * * * * * * * * * * * * * * * * *

For further information about San Francisco Superior Court ADR programs or dispute resolution alternatives, please contact:

Superior Court Alternative Dispute Resolution,
400 McAllister Street, Room 103
San Francisco, CA 94102
(415) 551-3876

or visit the Superior Court Website at
http://sfgov.org/site/courts_page.asp?id=3672

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SAN FRANCISCO
400 McAllister Street, San Francisco, CA  94102-4514

| | |
|---|---|
| **Plaintiff**<br><br>v.<br><br>**Defendant** | **Case No.** _____<br><br>**STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION** |

The parties hereby stipulate that this action shall be submitted to the following alternative dispute resolution process:

☐ **Private Mediation**          ☐ **Mediation Services of BASF**   ☐   **Judicial Mediation**
☐ **Binding arbitration**                                                       Judge _____
☐ **Non-binding judicial arbitration**                                   Judge _____
☐ **BASF Early Settlement Program**
☐ **Other ADR process (describe)** _____

Plaintiff(s) and Defendant(s) further agree as follows:

_____

_____

_____

| | | |
|---|---|---|
| **Name of Party Stipulating** | **Name of Party or Attorney Executing Stipulation** | **Signature of Party or Attorney** |
| ☐ Plaintiff   ☐ Defendant   ☐ Cross-defendant | | Dated: _____ |
| **Name of Party Stipulating** | **Name of Party or Attorney Executing Stipulation** | **Signature of Party or Attorney** |
| ☐ Plaintiff   ☐ Defendant   ☐ Cross-defendant | | Dated: _____ |
| **Name of Party Stipulating** | **Name of Party or Attorney Executing Stipulation** | **Signature of Party or Attorney** |
| ☐ Plaintiff   ☐ Defendant   ☐ Cross-defendant | | Dated: _____ |

☐ *Additional signature(s) attached*

ADR-2  3/06                      **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:                    FAX NO. *(Optional):* | |
| E-MAIL ADDRESS *(Optional):* | |
| ATTORNEY FOR *(Name):* | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
  STREET ADDRESS:
  MAILING ADDRESS:
  CITY AND ZIP CODE:
  BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| CASE MANAGEMENT STATEMENT | CASE NUMBER: |
|---|---|
| **(Check one):** ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000)    ☐ **LIMITED CASE** (Amount demanded is $25,000 or less) | |

| A CASE MANAGEMENT CONFERENCE is scheduled as follows: | | | | |
|---|---|---|---|---|
| Date: | Time: | Dept.: | Div.: | Room: |
| Address of court *(if different from the address above):* | | | | |

INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.

1. **Party or parties** *(answer one):*
   a. ☐ This statement is submitted by party *(name):*
   b. ☐ This statement is submitted jointly by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):*
   b. ☐ The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not):*
      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names):*
      (3) ☐ have had a default entered against them *(specify names):*
   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served):*

4. **Description of case**
   a. Type of case in ☐ complaint ☐ cross-complaint *(describe, including causes of action):*

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2007]

**CASE MANAGEMENT STATEMENT**

Page 1 of 4

Cal. Rules of Court,
rules 3.720–3.730
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4.  b.  Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐  *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**
    The party or parties request ☐ a jury trial ☐ a nonjury trial    *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**
    a.  ☐  The trial has been set for *(date):*
    b.  ☐  No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

    c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**
    The party or parties estimate that the trial will take *(check one):*
    a.  ☐  days *(specify number):*
    b.  ☐  hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*
    The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
    a.  Attorney:
    b.  Firm:
    c.  Address:
    d.  Telephone number:
    e.  Fax number:
    f.  E-mail address:
    g.  Party represented:
    ☐  Additional representation is described in Attachment 8.

9.  **Preference**
    ☐  This case is entitled to preference *(specify code section):*

10. **Alternative Dispute Resolution (ADR)**
    a.  Counsel ☐ has ☐ has not    provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
    b.  ☐  All parties have agreed to a form of ADR. ADR will be completed by *(date):*
    c.  ☐  The case has gone to an ADR process *(indicate status):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. d.    The party or parties are willing to participate in *(check all that apply):*
   (1) ☐  Mediation
   (2) ☐  Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)
   (3) ☐  Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)
   (4) ☐  Binding judicial arbitration
   (5) ☐  Binding private arbitration
   (6) ☐  Neutral case evaluation
   (7) ☐  Other *(specify):*

   e. ☐  This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.
   f. ☐  Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
   g. ☐  This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption):*

11. **Settlement conference**
   ☐  The party or parties are willing to participate in an early settlement conference *(specify when):*

12. **Insurance**
   a. ☐  Insurance carrier, if any, for party filing this statement *(name):*
   b.  Reservation of rights:   ☐ Yes   ☐ No
   c. ☐  Coverage issues will significantly affect resolution of this case *(explain):*

13. **Jurisdiction**
   Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.
   ☐ Bankruptcy    ☐ Other *(specify):*
   Status:

14. **Related cases, consolidation, and coordination**
   a. ☐  There are companion, underlying, or related cases.
      (1) Name of case:
      (2) Name of court:
      (3) Case number:
      (4) Status:
      ☐ Additional cases are described in Attachment 14a.
   b. ☐  A motion to   ☐ consolidate   ☐ coordinate   will be filed by *(name party):*

15. **Bifurcation**
   ☐  The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

16. **Other motions**
   ☐  The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Discovery**
a. ☐ The party or parties have completed all discovery.
b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
|---|---|---|

c. ☐ The following discovery issues are anticipated *(specify)*:

**18. Economic Litigation**
a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.
b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

**19. Other issues**
☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

**20. Meet and confer**
a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*:

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:

**21. Case management orders**
Previous case management orders in this case are *(check one)*: ☐ none ☐ attached as Attachment 21.

**22. Total number of pages attached *(if any)*:** _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: _____

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached

CM-110 [Rev. January 1, 2007]     **CASE MANAGEMENT STATEMENT**     Page 4 of 4



# Superior Court of California
## County of San Francisco

**HON. DAVID BALLATI**
**PRESIDING JUDGE**

## Judicial Mediation Program

**JENIFFER B. ALCANTARA**
**ADR PROGRAM ADMINISTRATOR**

The Judicial Mediation program offers mediation of complex civil litigation by a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

The Honorable David J. Ballati
The Honorable Anne Bouliane
The Honorable Ellen Chaitin
The Honorable Robert L. Dondero
The Honorable Ernest H. Goldsmith
The Honorable Harold E. Kahn
The Honorable Patrick J. Mahoney
The Honorable Tomar Mason

The Honorable James J. McBride
The Honorable Kevin M. McCarthy
The Honorable John E. Munter
The Honorable Ronald Quidachay
The Honorable A. James Robertson, II
The Honorable John K. Stewart
The Honorable Mary E. Wiss

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program and deliver a courtesy copy to Dept. 212. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Program Administrator will facilitate assignment of cases that qualify for the program.

Note: Space is limited. Submission of a stipulation to judicial mediation does not guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3876

10/07 (ja)

CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
Robert F. Clarke, Esq. (CSBN 79881) / Lowell W. Finson, Esq. (AZ Bar ID 010872)
PHILLIPS & ASSOCIATES
3030 North Third Street, Phoenix, Arizona 85012
TELEPHONE NO.: (602) 258-8900 ex 295   FAX NO.: (602) 288-1632
ATTORNEY FOR *(Name):* Plaintiff

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco 94102
BRANCH NAME: Civic Center Courthouse

**CASE NAME:**
Jeanne Diane Collins v. Bayer Corporation, et al.

FOR COURT USE ONLY

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

DEC 3 1 2007

GORDON PARK-LI, Clerk
BY: DEBORAH STEPPE
Deputy Clerk

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter   ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 1811) | | CGC-07-470556 |
| | | | | JUDGE: |
| | | | | DEPT: |

*Items 1–5 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☑ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800–1812)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not   complex under rule 1800 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Type of remedies sought *(check all that apply):*
   a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☑ punitive

4. Number of causes of action *(specify):* Nine

5. This case ☐ is ☑ is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date:
December 27, 2007

(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2006]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 201.8, 1800–1812;
Standards of Judicial Administration, § 19
www.courtinfo.ca.gov
American LegalNet, Inc.
www.USCourtForms.com

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers**

If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 5 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the *primary* cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. You do not need to submit a cover sheet with amended papers. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 201.8(c) and 227 of the California Rules of Court.

**To Parties in Complex Cases**

In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 1800 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
    Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 1800–1812)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment (*non-domestic relations*)
    Sister State Judgment
    Administrative Agency Award (*not unpaid taxes*)
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
    Declaratory Relief Only
    Injunctive Relief Only (*non-harassment*)
    Mechanics Lien
    Other Commercial Complaint Case (*non-tort/non-complex*)
    Other Civil Complaint (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief from Late Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

1   Robert F. Clarke, Esq. (CSBN 79881)
    Lowell W. Finson, Esq. (AZ Bar ID 010872)
2   **PHILLIPS & ASSOCIATES**
    3030 North Third Street, Suite 1100
3   Phoenix, Arizona 85012
    Telephone: (602) 258-8900 ext. 295
4   Facsimile: (602) 288-1632

5   Attorneys for Plaintiff

6

7                        **NO SUMMONS ISSUED**

8              **IN THE CALIFORNIA SUPERIOR COURT**

9                 **COUNTY OF SAN FRANCISCO**

10  JEANNE DIANE COLLINS, as surviving              Cause No.: _____
    statutory beneficiary for the wrongful death of
11  FLOYD COLLINS,
                                                    **COMPLAINT FOR DAMAGES**
12              Plaintiff,                                    **-AND-**
                                                    **DEMAND FOR JURY TRIAL**
13  vs.

14  BAYER CORPORATION, a Pennsylvania
    corporation, aka, BAYER HEALTHCARE and
15  BAYER AG; and MCKESSON
    CORPORATION, a Delaware corporation;
16  JOHN DOES 1-100 and ABC
    CORPORATIONS 1-100,
17
                Defendants.
18

19          Plaintiff, JEANNE DIANE COLLINS, by herself and the statutory beneficiaries of her

20  husband, now deceased, FLOYD COLLINS (hereinafter either JEANNE DIANE COLLINS or the

21  decedent, FLOYD COLLINS, may be referred to as, "decedent", "Plaintiff" or "Plaintiffs"), by and

22  through counsel, files this Complaint seeking judgment against Defendants BAYER

23  CORPORATION, BAYER HEALTHCARE, BAYER AG and MCKESSON CORPORATION and

24  in support thereof state as follows:

25                        **JURISDICTION AND VENUE**

26      1.      Jurisdiction and venue are proper under the United States Constitution as well as

27  under California law.

28      2.      At all times relevant hereto, Plaintiff JEANNE DIANE COLLINS has been a resident

                                        - 1 -

ENDORSED
FILED
Superior Court of California
County of San Francisco

DEC 3 1 2007

GORDON PARK-LI, Clerk
BY: _____DEBORAH STEPPE_____
                    Deputy Clerk

CASE MANAGEMENT CONFERENCE SET

MAY 3 0 2008 -9:00 AM

DEPARTMENT 212

CGC-07-470556

1 | of the State of California, and brings this action individually, and on behalf of the statutory heirs of

2 | FLOYD COLLINS.

3 |      3.     Defendant BAYER CORPORATION, (hereinafter "BAYER"), maintains its principal

4 | place of business in Crafton, Pennsylvania. BAYER is a corporation formed in the State of Indiana

5 | with its principal place of business located at 100 Bayer Road, Crafton, Pennsylvania 15205. It is

6 | a wholly owned subsidiary of BAYER A.G. BAYER does business in and has substantial contacts

7 | with the State of California. At all times material to this lawsuit, BAYER was engaged in the

8 | business of developing, manufacturing, licensing, promoting, marketing, distributing, and/or selling

9 | in interstate commerce and the State of California, either directly or indirectly, the pharmaceutical

10 | Trasylol® (hereinafter, "Trasylol"), also known as aprotinin.

11 |      4.     Defendant BAYER HEALTHCARE, is a division of BAYER PHARMACEUTICAL

12 | CORPORATION, a wholly owned subsidiary of Defendant BAYER CORPORATION with its

13 | principal place of business located at 400 Morgan Lane, West Haven, Connecticut 06516. At all

14 | times material to this lawsuit, BAYER Healthcare was engaged in the business of developing,

15 | manufacturing, licensing, promoting, marketing, distributing, and/or selling in interstate commerce

16 | and the State of California, either directly or indirectly, the pharmaceutical Trasylol.

17 |      5.     Defendant BAYER A.G., a global diversified chemical company, is a German

18 | corporation, with its principal place of business in Leverkusen, Germany. At all times relevant

19 | herein, BAYER A.G. was in the business of designing, testing, manufacturing, distributing and

20 | promoting certain pharmaceutical products, including Trasylol. Additionally, at all times relevant

21 | hereto, BAYER Corporation and BAYER A.G. shared many of the same officers and directors.

22 | Service on BAYER A.G. is being performed pursuant to Hague Convention on service abroad.

23 | Hereinafter BAYER Corporation, BAYER Healthcare and BAYER A.G. may be collectively

24 | referred to as the "Defendants."

25 |      6.     Defendant MCKESSON CORPORATION (hereafter, "MCKESSON") was and is

26 | a corporation organized and existing under the laws of the State of Delaware, with its principal place

27 | of business in San Francisco, California. MCKESSON was and is authorized to do business in the

28 | States of California, Nevada and Arizona, and was engaged in substantial business activity in each

-2-

1    and every place where Plaintiffs resided when they ingested Trasylol, and upon information and

2    belief, did distribute Trasylol directly and/or indirectly to Plaintiffs and/or their physicians.

3                              **GENERAL BAYER ALLEGATIONS**

4                                    **History of Trasylol**

5        7.      Trasylol (also known as Aprotinin injection) is a naturally occurring proteolytic

6    enzyme inhibitor obtained from bovine lung. Aprotinin consists of 58 amino acid residues. It is a

7    single-chain polypeptide, consisting of 6512 daltons and is cross-linked by three disulfide bridges.

8        8.      The reactive bond site for Aprotinin is lysine - 15 - alanine - 16, and it forms

9    reversible stoichiometric complexes.

10       9.      Aprotinin reacts with the serine site of the enzyme.

11       10.     Aprotinin was discovered in the 1930s when Kraut et a1 isolated a kallikrein inhibitor

12   from bovine lung.

13       11.     Aprotinin was launched as Trasylol in Germany in 1959.

14       12.     Trasylol was approved by the FDA in 1993 and is used to control bleeding in

15   Coronary Artery Bypass Grafting (hereinafter referred to as "CABG") surgeries. It is supplied as a

16   clear, colorless, sterile isotonic solution for intravenous administration.

17       13.     Trasylol is indicated for prophylactic use to reduce perioperative blood loss and the

18   need for blood transhsion in patients undergoing cardiopulmonary bypass in the course of CABG

19   procedures.

20       14.     Trasylol is a broad-spectrum protease inhibitor, which modulates the systemic

21   inflammatory response associated with cardiopulmonary bypass surgery. The effects of Trasylol use

22   in cardiopulmonary bypass surgery involve a reduction in inflammatory response, which translates

23   into a decreased need for allogenic blood transfusions and reduced bleeding.

24       15.     The following is the warning carried by Trasylol prior to the FDA Advisory Board

25   Committee Meeting: "Anaphylactic or anaphylactoid reactions are possible when Trasylol is

26   administered. Hypersensitivity reactions are rare in patients with no prior exposure to aprotinin. The

27   risk of anaphylaxis is increased in patients who are re-exposed to aprotinin-containing products. The

28   benefit of Trasylol to patients undergoing primary CABG surgery should be weighed against the risk

1   of anaphylaxis should a second exposure be required."

2       16.     All patients should first receive a test dose of Trasylol. This should be administered

3   intravenously at least 10 minutes before the loading dose.

4       17.     After induction of anesthesia but prior to sternotomy, the loading dose of Trasylol is

5   given to patients intravenously in the supine position, and is administered slowly over 20-30

6   minutes.

7       18.     Patients are also given a "pump-prime" dose, which is added to the priming fluid of

8   the cardiopulmonary bypass circuit, by replacement of an aliquot of priming fluid, prior to institution

9   of the cardiopulmonary bypass.

10      19.     Patients are also given a constant infusion dose, which is administered when the

11   loading dose is complete. This dose continues until surgery is complete and the patient leaves the

12   operating room.

13      20.     Trasylol inhibits pro-inflammatory cytokine release and maintains glycoprotein

14   homeostasis.

15      21.     According to Defendants, since its approval, an estimated 4.3 million patients have

16   been given Trasylol.

17      22.     Defendants estimated that Trasylol generated about $293 million in sales in 2005

18   alone, making it the company's 11th largest-selling drug.

19      23.     In late 2005, Defendants forecast that Trasylol would someday generate upwards of

20   $600 million annually.

21      24.     At all times pertinent, Defendant MCKESSON, did actively engage in the distribution

22   and marketing of Trasylol, and as such, was privy to all the facts and research known to Defendants

23   BAYER before Trasylol was approved, and thereafter.

24      25.     Defendant MCKESSON, knew or should have known, of the facts and research

25   regarding Trasylol, and did engage in direct marketing strategies which ignored the risks and dangers

26   associated with Trasylol.

27      26.     In light of MCKESSON'S involvement with more than simple distribution, it is

28   equally liable for the acts of Defendants BAYER, and will therefore, be included in the general

- 4 -

1 | references to acts of "Defendants" herein.

2 | **Trasylol's Association With the Increased Risk**

3 | **of Renal Failure, Heart Attack and Stroke**

4 | 27.    On January 20, 2006, Transfusion, on-line edition, published an article suggesting an

5 | association between Trasylol administration and renal toxicity among patients undergoing cardiac

6 | surgery with cardiopulmonary bypass. This study was an observational study that used statistical

7 | methodology to compare outcomes from patients undergoing CABG.

8 | 28.    On January 26, 2006, *The New England Journal of Medicine* (NEJM) published an

9 | article by Mangano, et al., reporting an association of Trasylol with serious renal toxicity and

10 | ischemic events, including heart attack and stroke in patients undergoing coronary artery bypass

11 | grafting surgery. This study was an observational study of patients undergoing CABG who received

12 | either Trasylol, one of two alternative drugs intended to decrease perioperative bleeding

13 | (aminocaproic acid or tranexamic acid), or no specific drug treatment.

14 | 29.    The FDA evaluated these studies, along with other studies in the literature and reports

15 | submitted to the FDA through the MedWatch program, to determine if labeling changes or other

16 | actions were warranted.

17 | 30.    While the FDA was continuing its evaluation it provided the following

18 | recommendations to healthcare providers and patients:

19 | Physicians who use Trasylol should carefully monitor patients for the occurrence of toxicity, particularly to the kidneys, heart, or central

20 | nervous system and promptly report adverse event information to BAYER, the drug manufacturer, or to the FDA MedWatch program,

21 | as described at the end of this advisory. Physicians should consider limiting Trasylol use to those situations

22 | where the clinical benefit of reduced blood loss is essential to medical management of the patient and outweighs the potential risks.

23 |

24 | **A September 29, 2006 Advisory Board Committee Meeting and the Walker Study**

25 | 31.    The FDA Advisory Board Committee convened on September 21, 2006, to discuss

26 | its findings regarding the safety of Trasylol and determine whether the warning on Trasylol needed

27 | to be changed.

28 | 32.    After reviewing what it considered to be all of the available data on the safety of

- 5 -

1  Trasylol, the 19-member advisory panel recommended to the FDA that Defendant BAYER didn't
2  need to strengthen a warning to doctors about the drug.

3      33.    Just days later, the FDA was contacted by Alexander Walker, a professor at Harvard's
4  School of Public Health, about a 67,000 patient-study he helped conduct at BAYER's request.

5      34.    BAYER knew of this data and failed to disclose this data, from its own research, to
6  the FDA at the September 21 Advisory Board Committee meeting. This data confirmed that Trasylol
7  increased the risk of renal failure, heart attack, and stroke.

8      35.    This study, conducted at the request of BAYER, examined 67,000 hospital records
9  of patients undergoing CABG surgery. The study suggests that the patients who received Trasylol
10  were at an increased risk for death, kidney failure, congestive heart failure, and stroke.

11      36.    Since this nondisclosure was unearthed, BAYER has suspended two of its employees.

12  **FDA Revises Labeling for Trasylol on December 15, 2006**

13      37.    Following the FDA-conducted review of safety information that began in January
14  2006, the FDA approved a revision in the Trasylol label.

15      38.    On December 15,2006 the U.S. Food and Drug Administration approved revised
16  labeling for Trasylol.

17      39.    The revised label strengthened Trasylol's safety warnings and limited Trasylol's
18  approved usage to very specific situations.

19      40.    The new labeling specifies that Trasylol should only be given to patients who are at
20  an increased risk for blood loss and blood transfusion in the setting of coronary bypass graft surgery
21  when patients undergo cardiopulmonary bypass.

22      41.    The changes also include a waning that Trasylol increases the possible risk for kidney
23  damage, and suggest ways to manage and reduce the patient's risk for hypersensitivity reactions.

24  **Bayer Discontinues Trasylol Clinical Trials**

25      42.    On January 25, 2007, BAYER announced it was discontinuing three clinical studies
26  for Trasylol.

27      43.    The studies were to investigate the safety and efficacy of Trasylol on transfusion
28  requirements and blood loss in adults undergoing spinal fusion surgery, pneumonectomy or

1 | esophagectomy for cancer, and total cystectomy in bladder cancer, all off-label uses.

2 | **GENERAL ALLEGATIONS OF DAMAGES**

3 |     44.    On or about November 28, 2001, FLOYD COLLINS was admitted into Valley
4 | Hospital and Medical Center in Las Vegas, Nevada, where he was taken after suffering an acute
5 | myocardial infarction, and underwent a relatively routine coronary artery bypass graft, but developed
6 | intraoperative and postoperative complications stemming from renal failure, and after an extensive
7 | hospitalization, died on December 23, 2001, as a result of the complications from the renal failure.

8 |     45.    With no contributory negligence on his part Mr. COLLINS was administered
9 | Trasylol, a pharmaceutical product designed, manufactured, promoted, distributed and sold by
10 | BAYER.

11 |     46.    As a direct, proximate and legal result of the negligence, carelessness, and other
12 | wrongdoing of the Defendants, as described herein, Mr. COLLINS began experiencing postoperative
13 | acute renal failure shortly after his surgery.

14 |     47.    As a direct, proximate and legal result of the negligence, carelessness, and other
15 | wrongdoing of the Defendants, as described herein, Mr. COLLINS was forced to be put on dialysis,
16 | and continued with dialysis treatments.

17 |     48.    As a direct, proximate and legal result of the negligence, carelessness, and other
18 | wrongdoing of the Defendants, as described herein, Mr. COLLINS' health deteriorated rapidly.

19 |     49.    As a direct, proximate and legal result of the negligence, carelessness, and other
20 | wrongdoing of the Defendants, as described herein, Plaintiff has required reasonable and necessary
21 | health care, attention and services, and has incurred medical, incidental, and service expenses
22 | thereupon.

23 |     50.    Plaintiff JEANNE DIANE COLLINS, was unaware of any association between the
24 | use of Trasylol and the death of her husband until she read news stories regarding Trasylol in late
25 | 2006, and therefore is not barred by any applicable statute of limitations.

26 | **COUNT I - NEGLIGENCE**

27 |     Plaintiff incorporates herein by reference the above paragraphs this Complaint as if fully set
28 | forth herein.

- 7 -

1    51.    At all times material to this lawsuit, Defendants owed Plaintiff a duty of reasonable

2    care and safety.

3    52.    Defendants' duties included, but were not limited to, carefully and properly designing,

4    testing, manufacturing, licensing, packaging, promoting, advertising, selling, and/or distributing

5    Trasylol into the stream of commerce, and providing warnings with regard to this drug.

6    53.    Defendants negligently and carelessly breached the above-described duties to Plaintiff

7    by committing negligent acts and/or omissions including but not limited to:

8    (A)    Defendants failed to use ordinary care in designing, testing, and

9    manufacturing Trasylol so as to avoid the high risk to users of unreasonable,

10    dangerous side-effects, some of which are fatal, such as renal failure;

11    (B)    Defendants failed to accompany Trasylol with adequate warnings that would

12    alert doctors, consumers, and other users to the potential adverse side effects

13    associated with the use of these drugs and the nature, severity and duration

14    of such adverse effects;

15    (C)    Defendants failed fo conduct adequate pre-clinical testing and post-marketing

16    surveillance to determine the safety and side effects of Trasylol;

17    (D)    Defendants failed to warn Plaintiff prior to actively encouraging the sale of

18    Trasylol, either directly or indirectly, orally or in writing, about the possibility

19    of becoming disabled as a result of the use of these drugs;

20    (E)    Defendants continued to promote the safety of Trasylol, while downplaying

21    any risks, even after Defendants knew of the risk of renal failure; and

22    (F)    Defendants were otherwise careless or negligent.

23    54.    Although Defendants knew or should have known that Trasylol caused unreasonably

24    dangerous side effects which many users would be unable to remedy by any means, Defendants

25    continued to market this drug to doctors for use in cardiac surgeries, when there were safer and less

26    expensive alternatives available.

27    55.    In addition, Defendants had a legal duty to comply with the U.S. Food, Drug and

28    Cosmetic Act, U.S. Code 21 USC § 301, et seq., and regulations promulgated thereunder.

- 8 -

1      56.    Defendants negligently and carelessly violated the laws and regulations of the United

2  States including, but not limited to the following: 21 CFR § 330.10(a)(4)(v) (Labeling); 21 CFR §

3  369.10 (Labeling); 21 CFR §§ 201.56 and 201.57 (d), (e) and (f) (Labeling); 21 CFR § 1.21 (a)

4  (Labeling); 21 CFR § 600.80 (Post-marketing Reporting of Adverse Experiences); 21 CFR § 314.

5  50 (Post Marketing Reports of Adverse Drug Experiences), as well as regulations relating to the

6  promotion of drugs for unlabeled uses. The violations of those and other statutes and regulations

7  constitute negligence *per se*.

8      57.    Defendants knew or should have known that consumers, like Plaintiff, would suffer

9  injury as a result of Defendants' failure to exercise ordinary care, as described above.

10      58.    As a direct and proximate cause of Defendants' negligent acts and/or omissions,

11  Plaintiff suffered, and continues to suffer from, each of the injuries and damages set forth in this

12  Complaint.

13  **COUNT II - STRICT LIABILITY**

14      Plaintiff incorporates herein by reference the above paragraphs of this Complaint as if fully

15  set forth herein.

16      59.    At all times material to this lawsuit, Defendants manufactured Trasylol.

17      60.    At all times material to this lawsuit, Defendants was engaged in the business of

18  distributing and selling Trasylol.

19      61.    Defendants sold the Trasylol, which was administered to Plaintiff during his cardiac

20  surgery, as alleged in this Complaint.

21      62.    The Trasylol administered to Plaintiff, was defective and, because of its defects, was

22  unreasonably dangerous to persons who might reasonably be expected to require its use. In addition,

23  this drug was dangerous to the extent beyond that which could reasonably be contemplated by

24  Plaintiff, and any benefit of this drug was far outweighed by the serious and undisclosed risks of its

25  use.

26      63.    The Trasylol administered to Plaintiff was defective at the time it was distributed by

27  the Defendants or left its control.

28      64.    The Trasylol administered to Plaintiff was expected to reach the user without

- 9 -

1 | substantial change in the condition in which it was sold.

2 |     65.    The Trasylol administered to Plaintiff reached him without substantial change in the
3 | condition in which they were sold.

4 |     66.    Plaintiff was a person who would reasonably be expected to use Trasylol.

5 |     67.    The defects in the Trasylol administered to Plaintiff were a direct and proximate cause
6 | of the injuries and damages sustained by Plaintiff as set forth in this Complaint.

7 | **COUNT III - MISREPRESENTATION**

8 |     Plaintiff incorporates herein by reference the above paragraphs of this Complaint as if fully
9 | set forth herein.

10 |     68.    At all relevant times herein, Defendants was in the business of manufacturing,
11 | promoting, advertising, selling and distributing Trasylol.

12 |     69.    Through its actions and omissions in advertising, promoting, reporting to the FDA,
13 | labeling, and otherwise, Defendants made public misrepresentations of material facts to, and/or
14 | concealed material facts from physicians, the FDA, and consumers like Plaintiff, concerning the
15 | character and safety of Trasylol.

16 |     70.    Those public misrepresentations and omissions include, but are not limited to those
17 | set forth in the general allegations section of this Complaint. Those false representations and
18 | omissions include but are not limited to the following:

19 |         (A)    Defendants failed to disclose that sufficient pre-clinical and clinical testing
20 |             and adequate post-marketing surveillance to determine the safety and side
21 |             effects of Trasylol had not been done;

22 |         (B)    Defendants failed to timely disclose, and/or intentionally concealed, the
23 |             interim and final results of the Walker Study showing that Trasylol use
24 |             dramatically increased the risk for renal failure, heart attack and stroke; and

25 |         (C)    Defendants failed to include adequate warnings with Trasylol about the
26 |             potential and actual risks, and nature, scope, severity, and duration of any
27 |             serious side effects of this drug, including without limitation, the risk of
28 |             hemorrhagic stroke.

- 10 -

1    71.    Defendants was obligated to disclose the foregoing risks, but failed to adequately and
2  timely do so even after it was in possession of information concerning those risks. Defendants'
3  representations that Trasylol was safe for its intended use were false, since this drug was, in fact,
4  dangerous to the health of Plaintiff when used to reduce perioperative bleeding in patients
5  undergoing cardiac surgery, and there were alternative products available that were less expensive,
6  equally as effective and posed less risk.

7    72.    In the alternative, Defendants failed to exercise reasonable care in ascertaining the
8  accuracy of the information regarding the safe use of Trasylol and communicating that information
9  to Plaintiff.

10    73.    Plaintiff was not aware of the falsity of the foregoing representations, nor was he
11  aware that material facts concerning Trasylol had been concealed or omitted. In reliance upon
12  Defendants' misrepresentations, Plaintiffs surgeon was induced to and did administer Trasylol to
13  Plaintiff for his cardiac surgery. If Plaintiff had known the true facts concerning the risks of the use
14  of Trasylol, in particular, the risk of renal failure, he would have requested Trasylol not be used in
15  his surgery, and requested the use of one of the safer alternatives.

16    74.    Plaintiffs and Plaintiffs doctor's reliance upon Defendants' misrepresentations was
17  justified, among other reasons, because said misrepresentations and omissions were made by
18  individuals and entities who were in a position to know the true facts concerning Trasylol, while
19  Plaintiff was not in a position to know the true facts, and because Defendants aggressively marketed
20  the use of this drug and concomitantly downplayed the risks in its use, thereby inducing Plaintiff's
21  surgeon to use these drugs, in lieu of other, safer alternatives. At all times relevant hereto,
22  Defendants' corporate officers, directors and/or managing agents knew of and ratified the acts of
23  Defendants, as alleged herein.

24    75.    As a direct and proximate result of Plaintiff and Plaintiffs surgeon's reliance on
25  Defendants' misrepresentations concerning the risks and benefits of Trasylol, Plaintiff suffered and
26  continues to suffer from the injuries and damages as set forth in this Complaint.

27                                **COUNT IV - FRAUD**

28    Plaintiff incorporates herein by reference the above paragraphs of this Complaint as if fully

- 11 -

1  set forth herein.

2  76.     Defendants concealed and continues to conceal past and present facts from the
3  consuming public, including Plaintiff, which it had a duty to disclose.

4  77.     The facts concealed and not disclosed include, but are not limited to, those set forth
5  in the general allegations section of this Complaint.

6  78.     Each of the facts concealed and not disclosed was material.

7  79.     Defendants concealed and continues to fail to disclose material facts to the consuming
8  public with the intent that the consuming public, like Plaintiff, would take a course of action that it
9  would otherwise not have taken if it had been informed of the actual facts known to the Defendants,
10  including the totality of the risks associated with the use of Trasylol.

11  80.     Plaintiff took such action relying on the assumption that the undisclosed facts did not
12  exist and/or were different than they actually were.

13  81.     The reliance of Plaintiff was justified.

14  82.     As a result of Plaintiffs reliance on the incomplete and inaccurate information
15  communicated by the Defendants and his assumption that the non-disclosed facts about the risks
16  associated with the use of Trasylol did not exist, Plaintiff suffered the injuries and damages alleged
17  in this Complaint.

18  **COUNT V - EXPRESS WARRANTIES**

19  Plaintiff incorporates herein by reference the above paragraphs of this Complaint as if fully
20  set forth herein.

21  83.     Trasylol, which were designed, tested, manufactured, distributed, promoted and sold
22  by the Defendants, was expected to, and did, reach Plaintiff without a substantial change in its
23  condition.

24  84.     Defendants, through their advertising and promotional materials, expressly warranted
25  that Trasylol was safe for the use for which it were intended, namely as a means to reduce
26  perioperative bleeding in patients undergoing cardiac surgery.

27  85.     Defendants breached said express warranties in that Trasylol was unsafe in light of
28  the risk of life-threatening side effects associated with its use, including, but not limited to, renal

- 12 -

1  failure.

2       86.    Plaintiff relied to his detriment on Defendants' express warranties.

3       87.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiff

4  suffered and continues to suffer from the injuries and damages set forth in this Complaint.

5  **COUNT V1- IMPLIED WARRANTIES**

6       Plaintiff incorporates herein by reference the above paragraphs of this Complaint as if fully

7  set forth herein.

8       88.    Trasylol, which was designed, tested, manufactured, distributed, promoted and sold

9  by the Defendants, was expected to, and did, reach Plaintiff without a substantial change in its

10  condition.

11       89.    Defendants, through its advertising and promotional materials, impliedly warranted

12  that Trasylol was safe for the use for which it was intended, namely as a means to reduce

13  perioperative bleeding in patients undergoing cardiac surgery.

14       90.    Defendants breached said implied warranties in that Trasylol was unsafe in light of

15  the risk of life-threatening side effects associated with its use, including, but not limited to, renal

16  failure.

17       91.    Plaintiff relied to his detriment on Defendants' implied warranties.

18       92.    As a direct and proximate result of Defendants' breach of implied warranties, Plaintiff

19  suffered and continues to suffer from the injuries and damages set forth in this Complaint.

20  **COUNT VII - FAILURE TO WARN**

21       Plaintiff incorporates herein by reference the above paragraphs of this Complaint as if fully

22  set forth herein.

23       93.    Defendants owed Plaintiff a duty of reasonable care to adequately warn him of the

24  risks associated with the use of Trasylol.

25       94.    Defendants knew or reasonably should have known that the warnings provided to

26  users of Trasylol regarding the risks associated with their use were incorrect and misleading in at

27  least the following material respects:

28            (a)    Trasylol was unaccompanied by proper warnings regarding all possible side

- 13 -

1   effects associated with its use and the comparative severity, incidence, and
2   duration of such adverse effects; and Trasylol was defective due to
3   inadequate post-marketing warnings or instructions, because Defendants
4   failed to provide adequate warnings to users or consumers and continued
5   aggressively to promote Trasylol, even after it knew or should have known
6   of the risks of injury from this drug.

7   95.   By failing to warn Plaintiff and cardiac surgeons of the adverse health risks associated
8   with the administration of Trasylol, Defendants breached its duty to Plaintiff of reasonable care and
9   safety.

10   96.   As a direct and proximate result of Defendants' failure to adequately warn Plaintiff
11   of the risk of renal failure associated with the use of Trasylol, Plaintiff suffered and continues to
12   suffer the injuries and damages set forth in this Complaint.

13                    **COUNT VIII - CALIFORNIA BUSINESS CODE VIOLATIONS**

14   Plaintiff incorporates herein by reference the above paragraphs of this Complaint as if fully
15   set forth herein.

16   97.   California Business & Professions Code Section 17200 provides that unfair
17   competition shall mean and include "all unlawful, unfair or fraudulent business practices and unfair,
18   deceptive, untrue or misleading advertising."

19   98.   California Business & Professions Code section 17500 provides that it is unlawful
20   for any person, firm, corporation or association to dispose of property or perform services, or to
21   induce the public to enter into any obligation relating thereto, through the use of untrue or misleading
22   statements.

23   99.   The acts and practices described herein were and are likely to mislead the general
24   public and/or to induce by false advertising, and therefore constitute unfair business practices within
25   the meaning of Business & Professions Code Section 17200 and/or 17500.

26   100.   The acts and untrue and misleading advertising set forth in presiding paragraphs are
27   incorporated by reference and are, by definition, violations of Business & Professions Code Section
28   17200 and 17500, includes, but is not limited to:

- 14 -

1        (A)    Representing to Plaintiffs, Plaintiffs' physicians and the general public that

2                Trasylol was safe, fit and effective for human consumption, knowing that said

3                representations were false, and concealing from the Plaintiffs, Plaintiffs'

4                physicians and the general public that Trasylol has a serious propensity to

5                cause injuries to users;

6        (B)    Engaging in advertising programs designed to create the image, impression

7                and belief by consumers, physicians and others that the use of Trasylol was

8                safe for human use, had fewer side effects and adverse reactions than other

9                methods for bleeding control,  constituted a convenient, safe form for

10              bleeding control, and was far more dangerous than other similar drugs which

11              cost a small fraction of the cost of Trasylol, even though the Defendants

12              knew these to be false, and even though the Defendants had no reasonable

13              grounds to believe them to be true;

14       (C)    Purposely downplaying and understating the health hazards and risks

15              associated with Trasylol; and

16       (D)    Issuing promotional literature deceiving potential users of Trasylol by

17              relaying positive information and manipulating statistics to suggest

18              widespread acceptability, while downplaying the known adverse and serious

19              health effects and concealing material relevant information regarding the

20              safety of Trasylol.

21       **COUNT IX - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

22       Plaintiff incorporates herein by reference the above paragraphs of this Complaint as if fully

23  set forth herein.

24       101.    Defendants are liable to Plaintiff in that they intentionally and recklessly inflicted

25  emotional distress by preventing public awareness of the risks associated with the use and

26  administration of Trasylol.

27       102.    Defendants knew or should have known that the failure to fully and truthfully inform

28  physicians and the public would cause severe and grave emotional distress in those patients who

1   were administered these drugs and subsequently had a renal failure requiring dialysis that caused
2   them permanent and debilitating injuries.

3       103.   Defendants' intentional decision to withhold and misreport information concerning
4   the high risk of suffering renal failure from use of Trasylol was motivated by the desire to preserve
5   sales of this drug.

6       104.   Defendants' knowing, intentional and conscious decision to withhold this information
7   from physicians and the public and Plaintiff was outrageous and intolerable and offends the moral
8   standards of this community.

9       105.   As a direct and proximate result of Defendants's acts and/or omissions, Plaintiff
10  suffered severe emotional distress, including but not limited to, depression, fear of death, and
11  nervousness.

12                      **COUNT X - PUNITIVE DAMAGES**

13       Plaintiff incorporates herein by reference the above paragraphs of this Complaint as if fully
14  set forth herein.

15       106.   The conduct of the Defendants in designing, testing, manufacturing, promoting,
16  advertising, selling, marketing, and distributing Trasylol, and in failing to warn Plaintiff and other
17  members of the public of the dangers inherent in the use of Trasylol, which were well known to the
18  Defendants, was attended by circumstances of fraud, malice, or willful and wanton conduct, done
19  heedlessly and recklessly, without regard to consequences, or of the rights and safety of others,
20  particularly Plaintiff. Such conduct includes, but is not limited to the following:

21          (A)   Upon information and belief, Defendants actually knew of Trasylol's
22                defective nature, as set forth herein, but continued to design, manufacture,
23                market, and sell Trasylol so as to maximize sales and profits at the expense
24                of the health and safety of the consuming public, including Plaintiff, and in
25                conscious disregard of the foreseeable harm caused by Trasylol;

26          (B)   Defendants, which spent millions of dollars a year researching and
27                developing medicines, and aggressively marketing Trasylol, devoted far less
28                attention to conducting sufficient pre-clinical and clinical testing and

- 16 -

1    adequate post-marketing surveillance of this drug;

2    (C)    Defendants continued to promote the safety of Trasylol, while providing to

3    consumers no warnings at all about the risks associated with it, even after

4    Defendants knew of that risk from multiple studies including the Walker

5    Study; and

6    WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as

7    follows:

8    a.    Past, present, and future special damages;

9    b.    Past, present, and future general damages;

10    c.    Punitive damages;

11    d.    Restitution;

12    e.    Disgorgement of profits;

13    f.    Prejudgment interest;

14    g.    Costs and attorneys' fees; and

15    h.    Such other and further relief as the court deems just and proper.

16

17    **JURY DEMAND**

18    Plaintiff, pursuant to the California Rules of Civil Procedure and all applicable local rules

19    of Court, demands a trial by jury.

20

21    **RESPECTFULLY SUBMITTED** this _____ day of December, 2007.

22    PHILLIPS & ASSOCIATES

23

24    By

25    Robert P. Clarke, Esq.
     Lowell W. Finson, Esq.

26    3030 North Third Street, Suite 1100
     Phoenix, Arizona 85012
     Attorneys for Plaintiff

27

28

- 17 -

CASE NUMBER: CGC-07-470556  JEANNE DIANE COLLINS VS. BAYER CORPORATION, A F

## NOTICE TO PLAINTIFF

A Case Management Conference is set for

|        |                                |
|--------|--------------------------------|
| **DATE:** | **MAY-30-2008** |
| **TIME:** | **9:00AM** |
| **PLACE:** | **Department 212** |
|        | **400 McAllister Street** |
|        | **San Francisco, CA 94102-3680** |

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.

However, it would facilitate the Issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed, served and lodged In Department 212 twenty-five (25) days before the case management

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A MANDATORY SETTLEMENT CONFERENCE OR TRIAL. (SEE LOCAL RULE 4)**

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400 McAllister Street, Room 103
San Francisco, CA 94102
(415) 551-3876

**See Local Rules 3.6, 6.0 C and 10 D re stipulation to commissioners acting as temporary judges**

1  FARLEY J. NEUMAN, ESQUIRE - State Bar #100021
   JAMES F. HETHERINGTON, ESQUIRE - State Bar #151331
2  JENKINS GOODMAN NEUMAN & HAMILTON LLP
   417 Montgomery Street, 10th Floor
3  San Francisco, California 94104
   Telephone: (415) 705-0400
4  Facsimile: (415) 705-0411

5  Attorneys for Defendant, McKESSON CORPORATION

6

7

8              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO

10

11  JEANNE DIANE COLLINS, as
    surviving statutory beneficiary for the      Case No. CGC-07-470556
12  wrongful death of FLOYD COLLINS,
                                                  **DEFENDANT MCKESSON**
13                            Plaintiff,          **CORPORATION'S ANSWER TO**
                                                  **PLAINTIFF'S COMPLAINT**
14  vs.

15  BAYER CORPORATION, a
    Pennsylvania corporation, aka,
16  BAYER HEALTHCARE and BAYER
    AG; and MCKESSON
17. CORPORATION, a Delaware
    corporation; JOHN DOES 1-100 and
18  ABC CORPORATIONS 1-100,

19                            Defendants.

20

21                    **RESPONSE TO ALLEGATIONS**

22          1.      Defendant MCKESSON CORPORATION ("McKesson"), in answer to the

23  unverified complaint of Plaintiff herein, denies each and every, all and singular, the

24  allegations of Plaintiff's unverified complaint, and denies that Plaintiff has been injured or

25  damaged in any of the sums mentioned in the complaint, or in any sum, or at all, as the

26  result of any act or omission of this answering defendant.

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-1-

DEFENDANT McKESSON CORPORATION'S ANSWER TO COMPLAINT

## AFFIRMATIVE DEFENSES

### Comparative Fault

2.    McKesson alleges that Plaintiff was herself careless and negligent in and about the matters alleged in the complaint, and that this carelessness and negligence on Plaintiff's own part contributed as a proximate cause to the happening of the incident and to the injuries, loss and damage complained of, and any recovery by Plaintiff should be reduced or eliminated based upon comparative fault.

### Fault of Others and Apportionment

3.    McKesson alleges that the sole proximate cause of the injuries and damages, if any, allegedly suffered by the Plaintiff was the negligence and fault of persons or entities other than these answering defendants, for whose acts or omissions these answering defendants are not legally or otherwise responsible. McKesson alleges that if these answering defendants should be found liable for any injury and damage to Plaintiff, then said liability for non-economic damages to Plaintiff must be limited to this answering defendant's proportionate share of fault, if any there be, as defined by California Civil Code Section 1431.2, et seq.

### Failure to Mitigate

4.    McKesson alleges that Plaintiff failed to mitigate her damages. The damages claimed by Plaintiff could have been mitigated by due diligence on her part or by one acting under similar circumstances. Any recovery by Plaintiff should be reduced or eliminated due to her failure to mitigate her damages.

### Assumption of the Risks

5.    McKesson alleges that Plaintiff had full knowledge of all the risks, dangerousness and hazards, if any there were, and nevertheless voluntarily and with full appreciation of the amount of danger involved in her actions and the magnitude of risk involved, assumed the risk of damages to her.

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-2-

DEFENDANT McKESSON CORPORATION'S ANSWER TO COMPLAINT

**Improper Use of Product**

6.    McKesson alleges that if Plaintiff sustained injuries attributable to the use of any product manufactured or distributed by McKesson, which allegations are expressly denied, the injuries were caused in whole or in part by the unreasonable, unforeseeable, inappropriate and/or improper use which was made of the product.  McKesson further alleges that the damages complained of in the complaint were caused in whole or in part by the misuse and abuse of the product in question.

**Statute of Limitations**

7.    McKesson alleges that the Plaintiff's complaint is barred by the applicable statute of limitations, including section 335.1 of the California Code of Civil Procedure.

**Modification of Product**

8.    McKesson alleges that the injuries and damages sustained by Plaintiff, if any, were solely and legally caused by the modification, alteration or change of the product referred to in the complaint and said modification, alteration or change was performed by persons or entities other than these answering defendants and without McKesson's knowledge or consent.

**State of the Art**

9.    McKesson alleges that Plaintiff is barred from recovery in that all products that are the subject of the complaint were in conformity with the existing state of the art and, as a result, these products were not defective in any manner.

**Laches**

10.    McKesson alleges that Plaintiff's complaint is barred by the doctrine of laches.

**Unclean Hands**

11.    McKesson alleges that Plaintiff's complaint is barred by the equitable doctrine of unclean hands.

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St
10ᵗʰ Floor
San Francisco, CA
94104
(415) 705-0400

-3-

1

**Preemption**

2       12.    McKesson alleges that at all times relevant to this action, McKesson was in

3   compliance with all applicable federal and state laws, regulations, and codes, that said laws

4   preempt the laws that are the basis for Plaintiff's claims, and that, as a result, Plaintiff's

5   complaint is barred.

6

**No Restitution Sought**

7       13.    McKesson alleges that Plaintiff's claim for restitution is a disguised claim

8   for damages, which are not permitted under Business & Professions Code sections 17200,

9   et seq.

10       WHEREFORE, McKesson prays that:

11       1.    Plaintiff takes nothing by reason of her claims against McKesson;

12       2.    Judgment be entered against Plaintiff and in favor of McKesson Defendant;

13       3.    Plaintiff be ordered to pay McKesson's costs;

14       4.    The court orders such other and further relief as the court deems just and

15   proper.

16   DATED:  March 26, 2008              JENKINS GOODMAN NEUMAN
                                         & HAMILTON LLP
17

18                                       By:_____

19                                          FARLEY J. NEUMAN
                                            JAMES F. HETHERINGTON
20                                          Attorneys for Defendant, McKESSON
                                            CORPORATION
21

22

23

24

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St
10th Floor
San Francisco, CA
94104
(415) 705-0400
25

26

-4-

DEFENDANT McKESSON CORPORATION'S ANSWER TO COMPLAINT

# California Business Portal

Secretary of State DEBRA BOWEN

**DISCLAIMER:** The information displayed here is current as of MAR 21, 2008 and is updated weekly. It is not a complete or certified record of the Corporation.

| Corporation |
|---|
| BAYER HEALTHCARE PHARMACEUTICALS INC. |

| **Number:** C1682848 | **Date Filed:** 3/8/1991 | **Status:** active |
|---|---|---|
| **Jurisdiction:** DELAWARE | | |

| Address |
|---|
| TAX DEPT |
| PO BOX 1000 |
| MONTVILLE, NJ 07045 |

| Agent for Service of Process |
|---|
| CORPORATION SERVICE COMPANY WHICH WILL DO BUSINESS IN CALIFORNIA AS CSC - LAWYERS INCORPORATING SERVICE |
| 2730 GATEWAY OAKS DR STE 100 |
| SACRAMENTO, CA 95833 |

Blank fields indicate the information is not contained in the computer file.

If the status of the corporation is "Surrender", the agent for service of process is automatically revoked. Please refer to California Corporations Code Section 2114 for information relating to service upon corporations that have surrendered.

FILED ___ ENTERED
LODGED ___ RECEIVED

NOV 27 2002

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE: PHENYLPROPANOLAMINE
(PPA) PRODUCTS LIABILITY
LITIGATION,

MDL NO. 1407

ORDER DENYING PLAINTIFF'S
MOTION TO REMAND

This document relates to:

Barnett, et al. v. American
Home Products Corp., et al.,
(NO. C02-425R)

THIS MATTER comes before the court on the motion of plain-
tiffs to remand the case to state court in Mississippi. Having
reviewed the papers filed in support of and in opposition to this
motion, the court rules as follows:

## I. BACKGROUND

Plaintiffs purchased a variety of over-the-counter drugs
including, but not limited to, products sold under the trade
names "Robitussin," "Alka-Seltzer Plus," "Dimetapp," "Tavist D,"
"BC," "Triaminic," "Contac," "Comtrex," and "Equate Tussin CF."
All of these products contained the ingredient phenylpro-
panolamine ("PPA"). The individuals later consumed the medica-
tion and suffered unidentified types of injuries. In June 2001,
plaintiffs filed an amended complaint in Mississippi state court
linking the PPA in the medicine with the injuries sustained.

ORDER
Page - 1 -

1  The complaint alleges numerous causes of action against both
2  manufacturers and distributors of PPA-containing products, as
3  well as several retail stores that sold those products.  One of
4  the stores named as a defendant, Bill's Dollar Stores, Inc.,
5  d/b/a Bill's Dollar Store ("Bill's Dollar Store"), is a Missis-
6  sippi corporation.  Two of the six total plaintiffs purchased
7  PPA-containing products from Bill's Dollar Store.[1]

8  Defendants removed the complaint to federal court alleging
9  that plaintiffs fraudulently joined Bill's Dollar Store.  Plain-
10 tiffs moved to remand to state court.  The case was later trans-
11 ferred to this court as part of a multi-district litigation
12 ("MDL").

13               II.  ANALYSIS

14 A plaintiff cannot defeat federal jurisdiction by fraudu-
15 lently joining a non-diverse party.  As an MDL court sitting in
16 the Ninth Circuit, this court applies the Ninth Circuit's fraudu-
17 lent joinder standard to the motion to remand.  See, e.g., In re
18 Dist. Drugs Prods. Liab. Litig., 220 F. Supp. 2d 414, 423 (E.D.
19 Pa. 2002); In re Bridgestone/Firestone, 204 F. Supp. 2d 1149,
20 1152 n.2 (S.D. Ind. 2002); In re Tobacco/Gov'tal Health Care
21 Costs Litig., 190 F. Supp. 2d 31, 34 n.1 (D. D.C. 2000); In re

22 ───────────────

23 [1]Defendants assert the misjoinder of these plaintiffs'
24 claims and request that the court sever and deny remand as to the
   four plaintiffs who did not purchase any products from Bill's
   Dollar Store, or from any other Mississippi store.  However,
25 because, as discussed below, the court denies remand as to all
26 plaintiffs named in this action, the court need not address the
   question of misjoinder at this time.

ORDER
Page - 2 -

1  Ford Motor Co. Bronco II Prods. Liab. Litig., MDL-991, 1996 U.S.

2  Dist. LEXIS 6769, at *2-4 (E.D. La. May 16, 1996).[2] Under this

3  standard, joinder of a non-diverse party is deemed fraudulent

4  "'[I]f the plaintiff fails to state a cause of action against a

5  resident defendant, and the failure is obvious according to the

6  settled rules of the state.'" Morris v. Princess Cruises, Inc.,

7  236 F.3d 1061, 1067 (9th Cir. 2001) (quoting McCabe v. General

8  Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987)).[3]

9      The propriety of removal to federal court is determined from

10 the allegations in the complaint at the time of removal. See

11 Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998)

12 However, in the case of fraudulent joinder, the defendant "'is

13 entitled to present the facts showing the joinder to be fraudu-

14 lent.'" Id. (quoting McCabe, 811 F.2d at 1339). See also Morris

15 _____

16 [2] See generally Nanowitz v. Brown, 991 F.2d 36, 40-41 (2d
   Cir. 1993); In Re Korean Airlines Disaster, 829 F.2d 1171, 1174-

17 76 (D.C. Cir. 1987).

18 [3] However, as a practical matter, application of the Fifth
   Circuit's fraudulent joinder standard would not alter the court's

19 conclusion. See Badon v. RJR Nabisco, Inc., 224 F.3d 382, 393
   (5th Cir. 2000) (remand is denied where there is "no reasonable

20 basis for predicting that plaintiffs might establish liability .
   . . against the in-state defendants.") For example, recent MDL

21 courts utilized fraudulent joinder standards similar, and in one
   case identical, to the Fifth Circuit's standard in deeming

22 Mississippi pharmacies and their employees fraudulently joined
   for reasons similar to those expressed in this opinion. See In

23 re Diet Drugs Prods. Liab. Litig., 220 F. Supp. 2d at 423-24
   (noting that there had been "a pattern of pharmacies being named

24 in complaints, but never pursued to judgment, typically being
   voluntarily dismissed at some point after the defendants' ability

25 to remove the case has expired"); In re Rezulin Prods. Liab.
   Litig., 133 F. Supp. 2d 272, 279 & n.3, 288-92 (S.D.N.Y. 2001).

ORDER
Page - 3 -

1  236 F.3d at 1067-68 (citing Cavallini v. State Farm Mut. Auto.
2  Ins. Co., 44 F.3d 256, 263 (5th Cir. 1995) for the proposition
3  that the court may "'pierc[e] the pleadings'" and consider
4  "summary judgment-type evidence.")

5      Defendants allege that plaintiffs fraudulently joined Bill's
6  Dollar Store, while plaintiffs claim the existence of legitimate
7  causes of action against Bill's Dollar Store, including products
8  liability, negligence, misrepresentation, and implied warranty
9  claims.  The parties also argue as to the relevance of a bank-
10 ruptcy petition filed by Bill's Dollar Store prior to the filing
11 of this suit.

12 A.    Products Liability

13     The complaint contains failure to warn and design defect
14 allegations pursuant to the Mississippi Products Liability Act.
15 Miss. Code Ann. § 11-1-63.  Under the Products Liability Act,
16 plaintiff must show that at the time the product left the control
17 of the manufacturer or seller, it was defective in failing to
18 contain adequate warnings or instructions, and/or was designed in
19 a defective manner. Miss. Code Ann. § 11-1-63 (a)(i)(2)-(3).
20 Plaintiff must also show that the manufacturers and sellers knew,
21 or in light of reasonably available knowledge or the exercise of
22 reasonable care should have known, about the danger that caused
23 the alleged damage.  Miss. Code Ann. § 11-1-63 (c)(i),(f)(i).[4]

24 _____

25 [4] See also Huff v. Shopsmith, Inc., 786 So.2d 383, 387 (Miss.
   2001) ("With the adoption of 11-1-63, common law strict liability,
26 as laid out in State Stove Mfg. Co., v. Hodges, 189 So.2d 113

ORDER
Page - 4 -

1   Plaintiffs allege in the complaint that "defendants" or "all

2   defendants" knew or should have known of dangers associated with

3   PPA. Moreover, plaintiffs specifically aver this knowledge or

4   reason to know on the part of the retailer defendants, including

5   Bill's Dollar Store. However, the court finds that no factual

6   basis can be drawn from the complaint that Bill's Dollar Store

7   had knowledge or reason to know of any dangers allegedly associ-

8   ated with PPA.

9       First, the complaint utilizes the plural "defendants" in a

10  number of allegations that one could not reasonably interpret to

11  include Bill's Dollar Store. See, e.g., Louis v. Wyath-Ryarst

12  Pharm., Inc., No. 5:00CV102LN, slip op. at 5-9 (S.D. Miss. Sep.

13  25, 2000) (finding products liability allegations lodged against

14  "defendants" conclusory where there was no factual support for

15  conclusion that Mississippi pharmacies had knowledge or reason to

16  know of alleged dangers associated with various diet drugs)."

17  ────────────────

18  (Miss. 1966), is no longer the authority on the necessary
    elements of a products liability action.")

19
     [8] See also In re Diet Drugs Prods. Liab. Litig., 220 F. Supp.
20  2d at 424 (finding complaints, including failure to warn,
     negligence, breach of warranty, and strict liability claims,
21  devoid of specific allegations against Mississippi pharmacies and
     "filled instead with general statements levied against all
22  defendants, which most properly can be read as stating claims
     against drug manufacturers."); In re Rezulin Products Liab.
23  Litig., 133 F. Supp. 2d at 291 (finding improper joinder in case
     where Mississippi pharmacies were lumped in with manufacturers
24  and acts alleged, including failure to warn, breach of warranty,
     and fraud, were attributed to "'defendants' generally", but
25  never connected to the pharmacies); accord Badon, 224 F.3d at
     391-93 ("While the amended complaint does often use the word
26

    ORDER
    Page - 5 -

1  For example, the complaint describes "defendants" as members of
2  the Non-Prescription Drug Manufacturers Association ("NDMA").
3  Through this association, "defendants" purportedly participated
4  in numerous discussions relating to the safety of PPA over the
5  past two decades, had representatives sit on the NDMA PPA Task
6  Force, and funded relevant studies.  In other words, plaintiffs,
7  in significant part, demonstrate "defendants'" knowledge as to
8  risks allegedly posed by PPA through activities engaged in by
9  manufacturer defendants alone.

10      Indeed, while "defendants" are alleged to have been aware or
11  to have had responsibility for awareness of numerous scientific
12  journal articles, incident reports, medical textbooks, and other
13  reports containing information as to risks of PPA consumption,
14  general medical practitioners are excluded from this awareness
15  and described as being not "fully informed."  The complaint
16  supplies no factual support for a conclusion that a dollar store
17  possessed medical and scientific knowledge beyond that possessed
18  by medical practitioners.

19      Second, the complaint specifically lays the responsibility
20  for allegedly concealing dangers posed by PPA on the manufacturer
21  defendants.  For example, the complaint alleges that the manufac-
22  turer defendants concealed material facts regarding PPA through
23  product packaging, labeling, advertising, promotional campaigns

24  _____

25  'defendants,' frequently it is evident that such usage could not
   be referring to the 'Tobacco Wholesalers.'"; finding conspiracy
26  allegations against Louisiana defendants entirely general).

ORDER
Page - 6 -

1  and materials, and other methods.  This allegation directly
2  undermines and contradicts the idea that Bill's Dollar Store had
3  knowledge or reason to know of alleged defects.  See, e.g.,
4  Lonie, slip op. at 4-5 (finding complaint's "major theme" to
5  consist of the "manufacturers' intentional concealment of the
6  true risks of the drug(s), coupled with dissemination through
7  various media of false and misleading information of the safety
8  of the drug(s) at issue, [which belied] any suggestion of knowl-
9  edge, or reason to know by [the] resident defendants."}  Cf. In re
10 Rezulin Products Liab. Litig., 133 F. Supp. 2d 272, 290 (S.D.N.Y.
11 2001) (finding Mississippi pharmacies facing failure to warn
12 claims fraudulently joined where "the theory underlying the
13 complaints [was] that the manufacturer defendants hid the dangers
14 of Rezulin from plaintiffs, the public, physicians, distributors
15 and pharmacists -- indeed from everyone.")

16      In sum, the court concludes that one could not reasonably
17 read the complaint to support the idea that the retailer defen-
18 dants had knowledge or reason to know of any dangers allegedly
19 associated with PPA.  Indeed, reading the complaint as a whole,
20 this allegation reveals itself as directed towards the manufac-
21 turer defendants alone.  As such, the court finds that plaintiffs
22 fail to state a products liability cause of action against Bill's
23 Dollar Store.[6]

24 ───────────
25   [6] The complaint once alludes to an "alternative" breach of
    express warranty claim under the Products Liability Act.  See
26 Miss. Code Ann. § 11-1-63 (a)(i)(4) (requiring a showing that the

ORDER
Page - 7 -

B.   **Negligence and Misrepresentation**

The complaint alleges negligence and misrepresentation by Bill's Dollar Store. A negligence cause of action also requires a showing of knowledge or reason to know on the part of the seller. See, e.g., R. Clinton Constr. Co., v. Bryant & Reaves, Inc., 442 F. Supp. 838, 851 (N.D. Miss. 1977) ("The rule is well settled that in order to fasten liability upon a party for negligence, it must be shown by a preponderance of the evidence that he knew or through the exercise of reasonable care should have known that his selection of a [product] would cause damage to his customer.")[7]  A misrepresentation cause of action requires

[7] seller breached an express warranty or failed to conform to other express factual representations upon which the claimant relied). However, the products liability allegations go on to touch solely upon failure to warn and design defect claims. Because the complaint lacks any factual basis for support of a breach of express warranty claim against Bill's Dollar Store, the court also finds this bare allegation insufficient to support remand.

[8] Accord Louis, slip op. at 3-4 & n.3 ("(K)nowledge, or a reason to know, is also a necessary requisite for any claim of failure to warn or negligence that a plaintiff might undertake to assert extraneous to a claim under the Products Liability Act itself (assuming solely for the sake of argument that such a claim could exist)."); Cadillac Corp. v. Moore, 320 So.2d 361, 365 (Miss. 1975) (discussing negligence in "vendor/purchaser" context and stating that "fault on the part of a defendant so as to render him liable is to be found in action or nonaction, accompanied by knowledge, actual or implied, of the probable result of his conduct.") Cf. Moore v. Memorial Hosp. of Gulfport, 825 So.2d 658, 664-66 (Miss. 2002) (extending "learned intermediary" doctrine to pharmacists in case involving prescription drug, and holding no actionable negligence claim could exist against a pharmacy unless a plaintiff indisputably informed the pharmacy of health problems which contraindicated the use of the drug in question, or the pharmacist filled

ORDER
Page - 8 -

1  a plaintiff to show:

2      (1) a representation; (2) its falsity; (3) its materi-
3      ality; (4) the speaker's knowledge of its falsity or
       ignorance of its truth; (5) the speaker's intent that
4      the representation should be acted upon by the hearer
       and in the manner reasonably contemplated; (6) the
5      hearer's ignorance of its falsity; (7) the hearer's
       reliance on its truth; (8) the hearer's right to rely
6      thereon; and (9) the hearer's consequent and proximate
       injury.

7  Johnson v. Parke-Davis, 114 F. Supp. 2d 522, 525 (S.D. Miss.

8  2000) (citing Allen v. Mac Tools, Inc., 671 So.2d 636, 642 (Miss.

9  1996)).

10     Again, the court finds that the general and contradictory

11 allegations in the complaint do not support the existence of any

12 knowledge or reason to know on the part of Bill's Dollar Store to

13 support a negligence cause of action. The court finds the

14 complaint similarly bereft of any factual support for the idea

15 that Bill's Dollar Store made any misrepresentations whatsoever

16 to plaintiffs regarding the PPA-containing products. See, e.g.,

17 Johnson, 114 F. Supp. 2d at 525 ("Suffice it to say that Plain-

18 tiffs have no proof . . . that any of the named [Mississippi]

19 representatives made any representations directly to any of the

20 Plaintiffs. Thus, none of the Plaintiffs was the 'hearer' of any

21 of the sales representatives' alleged misrepresentations.";

22 finding plaintiffs had no cause of action for misrepresentation).

23 Instead, as discussed above, the complaint attributes this

24

25 _____
   prescriptions in quantities inconsistent with the recommended
26 dosage guidelines).

ORDER
Page - 9 -

1  behavior to the manufacturing defendants alone. As such, the
2  court also finds that plaintiffs fail to state negligence and
3  misrepresentation causes of action against Bill's Dollar Store.
4  C.   Implied Warranty
5       The complaint also alleges that Bill's Dollar Store breached
6  implied warranties of merchantability and fitness for particular
7  purpose. See Miss. Code Ann. §§ 75-2-314, 315. The complaint
8  accuses "defendants" of breaching the implied warranty of mer-
9  chantability in failing to adequately label containers and
10 packages containing PPA, and because the products sold failed to
11 conform to promises or affirmations of facts made on the contain-
12 ers or labels. See Miss. Code Ann. § 75-2-314 (2)(e)-(f). The
13 complaint accuses both manufacturers and sellers of breaching the
14 implied warranty of fitness for particular purpose where they had
15 reason to know of the particular use of the products, and the
16 purchasers relied on the sellers' skill or judgment in selecting
17 and furnishing suitable and safe products. See Miss. Code Ann. §
18 75-2-315.
19      In order to recover for breach of implied warranty, a buyer
20 "must within a reasonable time after he discovers or should have
21 discovered any breach notify the seller of breach or be barred
22 from any remedy." Miss. Code Ann. § 75-2-607 (3)(a); accord C.R.
23 Daniels, Inc. v. Yazoo Mfg. Co., 641 F. Supp. 205, 210-11 (S.D.
24 Miss. 1986); Gast v. Rogers-Dingus Chevrolet, 585 So. 2d 725,
25 730-31 (Miss. 1991). Here, the complaint contains no indication
26 that plaintiffs provided Bill's Dollar Store with any notice as

ORDER
Page - 10 -

1  to an alleged breach of warranty prior to the institution of this
2  lawsuit.

3      Additionally, with respect to the merchantability claim, the
4  complaint contains no factual support for a conclusion that
5  Bill's Dollar Store was in any way involved with the labeling
6  and/or packaging of the products at issue.  Instead, the com-
7  plaint alleges that the manufacturer defendants concealed mate-
8  rial facts regarding PPA through product packaging and labeling.

9      The court likewise finds plaintiffs' fitness for particular
10 purpose allegation insufficient.  "Mississippi does not recognize
11 an implied warranty of fitness for a particular purpose when the
12 good is purchased for the ordinary purpose of a good of that
13 kind." Farris v. Coleman Co., 121 F. Supp. 2d 1014, 1018 (N.D.
14 Miss. 2000) (fitness for particular purpose claim failed where
15 plaintiff purchased cooler to keep food and beverages cold - the
16 ordinary purpose for which a cooler is used).  Here, plaintiffs
17 attested that they purchased PPA-containing products to remedy
18 their "cold, flu, sinus and/or allergy symptoms" - the ordinary
19 purpose of these medications.

20     Therefore, for the reasons stated above, the court finds
21 that plaintiffs fail to state implied warranty causes of action
22 against Bill's Dollar Store.

23 D.  Bankruptcy

24     Bill's Dollar Store filed a bankruptcy petition in February
25 2001, several months prior to the filing of plaintiffs' com-
26 plaint.  The filing of the bankruptcy petition operates as a stay

ORDER
Page - 11 -

1   on judicial or other proceedings brought against Bill's Dollar
2   store that were or could have commenced prior to the commencement
3   of the bankruptcy proceeding.  See 11 U.S.C. § 362(a); In re
4   Cajun Elec. Power Co-Op, Inc., 185 F.3d 446, 457 (5ᵗʰ Cir. 1999).
5        Plaintiffs argue that the automatic stay poses no barrier to
6   relief given that they were unaware of the bankruptcy petition at
7   the time they filed their complaint, and because they anticipate
8   that the Bankruptcy Court will agree to their pending request to
9   lift the stay.  However, whether or not plaintiffs knew of the
10  petition and whether or not the stay may later be lifted, the
11  fact remains that, at the time plaintiffs filed their complaint,
12  the stay operated to prohibit their lawsuit.  As noted above, the
13  court determines jurisdiction based on the claims as stated at
14  the time of removal.  As such, the court finds the existence of
15  the stay at the time of filing serves as an additional reason to
16  deny remand of this matter to state court.  Cf. Ritchey, 139 F.3d
17  at 1318-20 (denying remand where the statute of limitations had
18  expired at the time plaintiff filed the complaint).⁸

19                        III.  CONCLUSION

20       The court concludes that plaintiffs fail to state a cause of
21  action against the only non-diverse defendant, and that the

22  _____
23       ⁸Unlike in a number of other cases transferred to this MDL,
     the defendants here did not supply the court with any summary
24   judgment-type evidence to establish the retailer defendant's
     fraudulent joinder.  However, the court nonetheless finds that a
25   plain reading of the complaint does not allow a conclusion that
     plaintiffs state a cause of action against Bill's Dollar Store.
26

ORDER
Page - 12 -

1  failure is obvious according to the settled rules of Mississippi.

2  As such, the court finds Bill's Dollar Store fraudulently joined

3  and DENIES plaintiff's motion to remand the case to the state

4  courts of Mississippi.

5      DATED at Seattle, Washington this 26th day of November,

6  2002.

7

8                          BARBARA JACOBS ROTHSTEIN
                           UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER
Page - 13 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

FRANK OMOBUDE, INDIVIDUALLY AND
ON BEHALF OF THE WRONGFUL DEATH
BENEFICIARIES OF JOSEPHINE
OMOBUDE, DECEASED                                              PLAINTIFF

VS.                                    CIVIL ACTION NO. 3:03CV528LN

MERCK & CO., INC. AND
ROBERT M. EVANS, M.D.                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiff
Frank Omobude, individually and on behalf of the wrongful death
beneficiaries of Josephine Omobude, to remand pursuant to 28
U.S.C. § 1447. Defendant Merck & Co., Inc. has responded to the
motion and the court, having considered the memoranda of
authorities submitted by the parties, concludes that the motion is
not well taken and should be denied.

Plaintiff, a citizen of Mississippi, brought this suit in the
Circuit Court of Hinds County, Mississippi seeking to recover
damages for the alleged wrongful death of his mother, Josephine
Omobude, which he alleges resulted from her use of the
prescription drug Vioxx. Plaintiff sued Merck, the non-resident
corporation that manufactured and distributed Vioxx, and also
named as a defendant Robert M. Evans, M.D., the local physician
who is alleged to have prescribed Vioxx to Josephine Omobude.
Merck timely removed the case on the basis of diversity

jurisdiction under 28 U.S.C. § 1332,[1] contending, based on the allegations of plaintiff's complaint, that the requirement of an amount in controversy in excess of $75,000 is clearly satisfied,[2] and contending further that there is complete diversity of citizenship since Dr. Evans, though a Mississippi resident, has been fraudulently joined to defeat diversity. See Heritage Bank v. Redcom Labs., Inc., 250 F.3d 319, 323 (5th Cir. 2001) (fraudulent joinder of non-diverse will not defeat diversity jurisdiction).

The premise of Merck's fraudulent joinder argument, as gleaned from its notice of removal and its response to plaintiff's motion to remand, is that plaintiff's complaint does not allege a sufficient factual basis for his putative claim against Dr. Evans. In particular, Merck notes that throughout his complaint, plaintiff repeatedly and consistently asserts that Merck encouraged the use of Vioxx in "improper customers;" that it "misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects;" that despite knowledge of the defective nature of its product and for the purpose of increasing its sales and profits at the expense of the

_____

[1]     That statute provides, in pertinent part, as follows: (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different states.

[2]     The court notes that plaintiff has not disputed that the amount in controversy exceeds $75,000.

2

general public's health and safety, Merck aggressively marketed
Vioxx both directly to the consuming public and indirectly to
physicians through drug sales representatives as effective and
safe and with inadequate warnings and instructions; and that Merck
failed to provide timely and adequate post-marketing warnings or
instructions after the manufacturer knew of the risk of injury
from Vioxx.  On the basis of these allegations, plaintiff alleges
claims against Merck for strict liability, negligence, breach of
express and implied warranties and fraudulent misrepresentation.
Merck argues that in light of plaintiff's repeated allegations
that Merck misrepresented the safety and efficacy of its product
and consistently concealed the known risks and dangers not only
from the consuming public but also from physicians, plaintiff's
charge of medical negligence against Dr. Evans based on nothing
more than a conclusory allegation, wholly unaccompanied by any
factual support, that Dr. Evans "knew, or should have known, of
the dangerous side effects of these medications," and that "his
prescribing such medications in light of such knowledge presents a
deviation from the standard of care," is manifestly insufficient
to state a cognizable claim.

In similar cases, this court has held that conclusory and
contradictory allegations of knowledge, which were belied by the
factual allegations of the complaint, demonstrated that the
resident defendants against whom such allegations of knowledge
were made, had been fraudulently joined.  See Brown v. Bristol
Myers Squibb Co., Civ. Action No. 4:02CV301LN, slip op. at 11-12

3

(S.D. Miss. Dec. 2, 2002) (resident physician fraudulently joined where claim was asserted in conclusory terms and contradicted by allegations of the pharmaceutical manufacturer's concealment or misrepresentation of information); Louis v. Wyeth-Ayerst Pharmaceuticals, Inc., Civ. Action No. 5:02CV102LN (S.D. Miss. Sept. 25, 2000) (same with respect to resident pharmacy defendant); see also In re Rezulin Prods. Liab. Litig., No. 00 Civ. 2843, 2003 WL 31852826, at *2 (S.D.N.Y. Dec. 18, 2002) (physician defendant fraudulently joined based on conclusory allegations). In the court's opinion, the same conclusion is in order here.

In so concluding, the court is aware of plaintiff's argument that "[a] party may plead alternative and inconsistent facts or remedies against several parties without being barred." Guy James Constr. Co. v. Trinity Indus., Inc., 644 525, 530 (5th Cir. 1981). While this may be true generally, the court's point here is that the plaintiff has not pled inconsistent facts, but rather has pled consistent facts that are inconsistent with the conclusion he pleads as to Dr. Evans. Every factual allegation this plaintiff has made is to the effect that Merck withheld and concealed and misrepresented the true facts regarding Vioxx; and yet, without alleging any factual basis for the charge, plaintiff concludes that Dr. Evans "knew or should have known" the truth about Vioxx that Merck had misrepresented and concealed.

The court does not suggest that a "knew or should have known" allegation" will necessarily always be conclusory and hence

4

9016807201        PAGE 04

insufficient to state a cognizable claim simply because it is not
attended by a specific factual allegation as to the source of such
knowledge.  However, in cases like this, where a plaintiff has
specifically alleged facts from which one would necessarily infer
that the defendant in question would not have known information
otherwise alleged to have been misrepresented or concealed from
him, then in the court's opinion, in that limited circumstance, to
sustain his pleading burden, the plaintiff would have to plead at
least some facts tending to show why or how the defendant knew or
should have known of the information that has been misrepresented
to or concealed from him.  Otherwise, the court would be in the
untenable position of assuming that a factual basis exists for a
conclusory allegation that is entirely inconsistent with every
factual allegation in the complaint.  No precedent of which this
court is aware suggests that this would be proper.[3]  The caselaw,

---

[3]    Plaintiff has cited a number of cases from this district
in which claims against physician and pharmacy defendants have
been found sufficient to state a claim, but in the court's
opinion, these cases are readily distinguishable.  Henderson v.
GlaxoSmithKline, No. 5:01CV159BrS (S.D. Miss. March 21, 2000),
involved a question of fraudulent misjoinder, which is not an
issue here.  In Hancock v. Bayer Corp., No. 3:03CV67WS (S.D. Miss.
Apr. 18, 2003), plaintiff alleged that the physicians in question
had committed numerous acts of negligence other than merely
prescribing an allegedly defective drug, such as failing to timely
recognize the plaintiffs' adverse drug reactions, failing to
monitor the plaintiffs, and prescribing the drug in the wrong
dosage and in a manner inconsistent with the product labeling and
contraindicated usages.  Womack v. Bayer Corp., No. 3:03CV157WS
(S.D. Miss. Apr. 18, 2003), involved specific allegations of
alleged negligence by the defendant doctor, including that the
physicians should have known of the risks in light of warnings
actually issued to physicians by Bayer.  No such claims were pled
here.  Likewise in the several Bayer cases remanded by Judge
Pickering and cited by plaintiff, including Easterling v. Bayer

5

in fact, is to the contrary.  See Great Plains Trust Co. v. Morgan
Stanley Dean Witter & Co., 313 F.3d 305, 313 (5th Cir. 2002)
(stating that the court will not "accept as true conclusory
allegations or unwarranted deductions of fact"); Sago v. Wal-Mart
Stores, Inc., 2003 WL 22076954, at *2 (S.D. Miss. 2003) (holding
that "conclusory or generic allegations of wrongdoing on the part
of the non-diverse defendant are not sufficient to show that the
defendant was not fraudulently joined") (citing Badon v. RJR
Nabisco, Inc., 224 F.3d 382, 392-93 (5th Cir. 2000); cf.
Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th
Cir. 1996) ("When considering a motion to dismiss for failure to
state a claim, the district court must take the factual
allegations of the complaint as true and resolve any ambiguities
or doubts regarding the sufficiency of the claim in favor of the
plaintiff.  However, conclusory allegations or legal conclusions
masquerading as factual conclusions will not suffice to prevent a
motion to dismiss."); Ross v. Citifinancial, Inc., 2003 WL
22026346, at *3 (5th Cir. 2003) (noting court's recognition of
"the similarity between standards for Federal Rule of Civil
Procedure 12(b)(6) (failure to state claim) and fraudulent

---

Corp., No. 2:03CV37PG (S.D. Miss. Apr. 24, 2003), Dearman v. Bayer
Corp., No. 2:03CV38PG (S.D. Miss. Apr. 24, 2003), Jones v. Bayer
Corp., No. 2:03CV53PG (S.D. Miss. Apr. 24, 2003), Keys v. Bayer
Corp., No. 2:03CV39PG (S.D. Miss. Apr. 24, 2003), and Sumrall v.
Bayer, No. 2:03CV52PG (S.D. Miss. Apr. 24, 2003), the court found
that the plaintiffs had made specific allegations of negligence
against the resident doctors "for failing to properly monitor and
test each of the Plaintiffs according to the defendant drug
companies' recommendations."  No such allegations were made in
plaintiff's complaint in the case at bar.  See infra note 4.

6

joinder" but noting that the latter inquiry is broader); <u>Cranston v. Mariner Healthcare Mgmt. Co.</u>, 2003 WL 21517999, at *4 (N.D. Miss. 2003)(stating that on motion to dismiss, "[t]he court will not accept as true any conclusory allegations or unwarranted deductions of fact").[4]

---

[4]    The court notes that the only claim plaintiff has alleged against Dr. Evans in his complaint is medical negligence based on the allegation that Dr. Evans "knew, or should have known, of the dangerous side effects of these medications" and his prescribing "said medications in light of such knowledge." In his motion to remand, however, plaintiff attempts to recharacterize and add to his claim against Dr. Evans. He argues, for example, that his claim that Merck produced and distributed defective products does not preclude his claim against Dr. Evans with regard to his "negligence in prescribing Vioxx or his negligence in monitoring plaintiff." He argues further that

> [j]ust as Merck failed to adequately warn Plaintiff's Decedent's physician, Dr. Evans failed to conduct regular monitoring of Plaintiff's Decedent to ensure the discovery of potentially serious side effects. . . . including, not limited to, failing to perform adequate tests before the initiation of Vioxx treatment, and failing to subsequently perform other tests after initiation of Vioxx therapy to monitor any change in the status of Plaintiff's decedent. . . . Defendant Evans also failed to warn Plaintiff's Decedent of possible side effects. . . .

None of these allegations, or any hint of such allegations, appears anywhere in the complaint which, as to Dr. Evans, alleges only that he was negligent in prescribing Vioxx when he knew, or should have known, of the dangers of the drug. Plaintiff cannot secure remand on the basis of allegations and claims that are not set forth in his state court pleading. <u>See</u> However, the Cavallinis did not cite, nor have we found, any case in which such evidence has been considered to determine whether a claim has been stated against the nondiverse defendant under a legal theory not alleged in the state court complaint. <u>Cavallini v. State Farm Mut. Auto Ins. Co.</u>, 44 F.3d 256, 263 263 n.14 (5th Cir. 1995)(rejecting plaintiff's "assertion that post-removal affidavits can be used to defeat removal by presenting new causes of action").

7

For the foregoing reasons, the court concludes that plaintiff's motion to remand is not well taken and should be denied.

Accordingly, it is ordered that plaintiff's motion to remand is denied.

SO ORDERED this 3rd day of October, 2003.

UNITED STATES DISTRICT JUDGE

8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

SEP 25 20

MARGIE LOUIS, PEARLIE COX, MARY
DOTTOREY, OTIS ABRON, GLORIA LOTT,
EARL PIGG, MARION WEATHERS AND KATHY
ROBERTS                                                              PLAINTIFFS

VS.                                                   CIVIL ACTION NO. 5:00CV102LN

WYETH-AYERST PHARMACEUTICALS, INC. F/K/A
WYETH-AYERST LABORATORIES, A DIVISION OF
AMERICAN HOME PRODUCTS, INC.; WYETH
LABORATORIES, INC., A.H. ROBBINS COMPANY,
INC., AMERICAN HOME PRODUCTS, INC.,
POLK'S DISCOUNT DRUGS, INC.; ECONOMY DRUG
STORE, INC.; BRANDON DISCOUNT DRUGS, INC.;
KING'S DISCOUNT DRUGS, INC.; FORREST BRAILEY,
JR.; SUSAN BOONE; CHRIS L. LUCKETT; LESTER A.
LALA; CHARLES CARTER, JR.; GINA SABBATINI;
SCOTT M. BOONE; VICTOR E. RUSSELL, JIMMY ROBINSON,
JR.; JEWELL E. NORMAN; MCR PHARMACEUTICALS INC.,
A/K/A AMERICAN PHARMACEUTICALS, INC, A/K/A
MCR/AMERICAN PHARMACEUTICALS, INC.; JONES
MEDICAL INDUSTRIES, A/K/A ABANA PHARMACEUTICALS,
INC.; QUALITEST PRODUCTS, INC.; SEATRACE
PHARMACEUTICALS, INC.; EON LABS MANUFACTURING,
INC.; FISONS CORPORATION; GATE PHARMACEUTICALS;
INTERNEURON PHARMACEUTICALS, INC.; MEDEVA
PHARMACEUTICALS, INC.; RUGBY LABORATORIES,
INC.; SMITHKLINE BEECHAM CORPORATION;
AND ECKERD CORPORATION                                               DEFENDANTS

## ORDER

This cause is before the court on the motion of plaintiffs to
remand this case to the Circuit Court of Claiborne County,
Mississippi. Defendants have responded in opposition to the motion
and the court, having considered the memoranda of authorities
submitted by the parties in the light of plaintiffs' complaint in
this cause, concludes for reasons to follow that plaintiffs' motion
should be denied.

Plaintiffs, like many others throughout this country, brought
this action to recover damages for injuries they claim to have

:.4 FAX 601 948 4555          BUTLER SNOW ATTYS.                                &'00J

s..fered as a result of their taking the diet drugs Pondimin, Redux
(also known by fenfluramine and dexfenfluramine, respectively)
and/or Phentermine. The plaintiffs herein, Mississippi residents,
filed their suit in Mississippi state court, and in addition to
suing the manufacturers of these drugs, all of which are of diverse
citizenship from plaintiffs, and another diverse company, Eckerd
Corporation, which is alleged to have distributed, marketed and
promoted these drugs, plaintiffs sued a number of Mississippi
pharmacies (Polk's Discount Drugs, Inc., Economy Drugs of
Greenwood, Inc., Liberty Drug Store, Brandon Discount Drugs, Inc.
and King's Discount Drugs) and a multitude of other Mississippi
residents (Forest Bratley, Jr., Susan Boone, Chris L. Luckett,
Lester A. Lala, Charles Charter, Jr., Gina Savatini, Scott M.
.une, Victor E. Russell, Jimmy L. Robinson, Jr. and Jewell E.
.erman) who were employed as sales representatives for one or
..ther of the defendant drug companies. Defendants, contending
..at all of the Mississippi defendants were fraudulently joined,
removed the case to this court on the basis of diversity of
citizenship, following which plaintiffs filed their present motion
to remand.

The standard for evaluating claims of fraudulent joinder is,
of course, well known by all of the parties, as well as by the
court; and the court, having given due consideration to that
standard on the basis of the complaint filed by plaintiffs in this
cause, concludes that plaintiffs have no possibility of recovery
against any of the nondiverse defendants.

2

The complaint filed by plaintiffs in this cause includes, so far as the court can tell, ten counts, numbered and headed as follows:

Count I:    Strict Product Liability
Count II:   Failure to Warn
Count IV:   Negligence
Count I:    Strict Product Liability (Defective Design) Against the AHP Defendants
Count II:   Strict Product Liability (Failure to Warn) Against All Defendants
Count III:  Negligence Against All Defendants
Count IV:   Fraud and Misrepresentation Against All Defendants
Count V:    Wantoness
Count VI:   Fraud, Misrepresentation and Suppression
Count VI:   Conspiracy[1]

A premise of each count that can reasonably be construed as having been asserted against the resident pharmacy defendants[2] is knowledge on the part of these defendants of the dangers posed by

---

[1]     It appears that plaintiffs may have taken two complaints from other cases and attempted to combine them into a single complaint, amending the content as needed for this case. That would explain why they have asserted their causes of action in this duplicate fashion, and why the complaint begins on page one, continues through page 19 (skipping page 18), and then picks up on a new and different page 2 and continues on through page 64, and contains two sections (each somewhat different) for each of the headings, "Parties", "Jurisdiction" and "General Allegations"/"Factual Allegations."

[2]     Plaintiffs' claims of wantoness and conspiracy, while nominally asserted against "defendants", is clearly not directed toward the pharmacy defendants, as the substance of these counts utterly belies any conclusion that these defendants are a target of these counts. See Eadon v. RJR Nabisco Inc., No. 98-30942, 2000 WL 115424, at *7 (5th Cir. Aug. 16, 2000) (noting that "[W]hile the amended complaint does often use the word 'defendants,' frequently it is evident that such usage could not be referring to the 'Tobacco Wholesalers.'").

3

the subject drugs.[3]  Yet, and notwithstanding the fact that the
complaint in places may allege or allude generally to knowledge
possessed by the "defendants,"[4] it is plain that the complaint on
the whole cannot reasonably and legitimately be construed as
alleging any factual basis for the conclusion that any of the

---

[3]       Generally speaking, under Mississippi's Products
Liability Act, Miss. Code Ann. § 11-1-63, liability of a product
seller may be based on a theory of defective design or inadequacy
of warning/failure to warn.  Either theory requires proof of
knowledge on the part of the seller.  See Miss. Code Ann. § 11-1-
63(f) ("In any action alleging that a product is defective because
of its design . . . the manufacturer or product seller shall not be
liable if the claimant does not prove by the preponderance of the
evidence that at the time the product left the control of the
manufacturer or seller: (i) [t]he manufacturer or seller knew, or
in light of reasonably available knowledge or in the exercise of
reasonable care should have known, about the danger for which
recovery is sought. . . ."); Miss. Code Ann. § 11-1-63(c)(i) ("In
any action alleging that a product is defective because it failed
to contain adequate warnings or instructions . . . the manufacturer
or seller shall not be liable if the claimant does not prove by a
preponderance of the evidence that at the time the product left the
control of the manufacturer or seller, the manufacturer or seller
knew or in light of reasonably available knowledge should have .
known about the danger that caused the damage for which recovery is
sought. . . .").  Thus, even if the "learned intermediary"
doctrine, which is incorporated into the statute, see Miss. Code
Ann. § 11-1-63(c)(iii), were not an impediment to recovery, the
absence of an allegation that a defendant knew, or had reason to
know, of the product defect, dooms any claim for defective design or
lack of adequate warning.  Likewise, knowledge, or a reason to
know, is also a necessary requisite for any claim of failure to
warn or negligence that a plaintiff might undertake to assert
extraneous to a claim under the Products Liability Act itself
(assuming solely for the sake of argument that such a claim could
exist).  An essential element of a claim of fraud is knowledge of
the falsity of the representation; and regarding any claim of
omission of facts, a person obviously cannot disclose what he does
not and cannot know.

[4]       They allege, for example, that the drugs "were marketed
to be used in combination which was known to the Defendants to
cause harmful side effects which outweighed any potential utility."

4

pharmacy defendants had any knowledge or reason to know of any of the dangers associated with the product(s) of which plaintiffs contend they were unaware.  Quite to the contrary, the complaint, the major theme of which is the manufacturers' intentional concealment of the true risks of the drug(s), coupled with dissemination through various media of false and misleading information of the safety of the drug(s) at issue, belies any suggestion of knowledge, or reason to know by these resident defendants.  According to the lengthy and extremely detailed factual allegations of the complaint, the product manufacturers had knowledge from numerous sources that the drug(s) at issue was unsafe, yet they, in the face of this knowledge, not only concealed this information, but affirmatively misrepresented to the FDA, to the public, to consumers, to the plaintiffs, to pharmacists, to dispensing entities, and even to AHP's own business partner, that the product(s) was safe.[1]  In the face of plaintiffs'

---

[1]     By way of example only, plaintiffs allege variously that:
"Plaintiffs and/or their prescribing physicians and other dispensing entities justifiably relied on and/or were induced by the misrepresentations and/or active concealment of Defendants to her detriment."

"These defendants, having undertaken the manufacturing, marketing, prescription dispensing, distributing and promotion of the diet drugs described herein owe a duty to provide the Plaintiffs, and physicians, regulators and others upon whom it was known by Defendants that the plaintiffs would rely, accurate and complete information regarding its products."

"AHP was put on notice . . . that the . . . labeling was probably inadequate and needed to be revised. . . . (D)espite this warning. . . no changes were made to the labeling between 1990 and mid-1996. . . . (AHP was

5

motivated] to conceal the safety hazards of [its
products]. . . . [A]lthough an FDA official warned that
there were too many adverse reaction reports . . . and
that he wanted AHP DEFENDANTS to discourage combination
use, the Defendants did not actively discourage the use
of Fen-Phen.

[AHP knew as early as 1991 that the warning on the
Pondimin labeling from 1987 through 1996] was false and
misleading . . [y]et . . . AHP did nothing to strengthen
the warning language about PPH. . . . AHP deliberately
chose not to make any change to the labeling in the
summer or Fall of 1994, but chose to provide false and
misleading information in its product labeling for
Pondmin.

By [February of 1995], APH was already concerned the FDA
might require to have a black box warning about PPH in
the Redux labeling and it had conducted market research
which showed that with a black box warning, Redux sales
could only be a fraction of what AHP hoped for.
[AHP] was fully aware that its warning about PPH in the
Pondimin labeling was inadequate.

AHP DEFENDANTS believed it was in their best interest to
have consumers uninformed about the deadly risk of PPH. .
. . The PHENTERMINE DEFENDANTS also sought to keep
consumers and prescribing physicians uninformed about the
true risk of PPH. . . . Although [the risks of PPH] were
known to phentermine manufacturers around the world,
these manufacturers actively concealed this fact from
prescribing physicians and consumers, including the
Plaintiffs and their prescribing physicians, and
misrepresented the risk of PPH by failing to place any
such warning in the package insert. . . . [B]y failing to
disclose [the facts], the package insert for fenfluramine
implicitly and falsely stated to the Plaintiffs'
prescribing physicians that it could be prescribed in
combination with phentermine.

[From 1993 through 1995] [the] AHP defendants received
further information [about risks of valvular heart
disease] - yet chose to ignore it. . . . [T]he
PHENTERMINE DEFENDANTS [also] began to receive reports
[of] VHD. Defendants failed to obtain any more
information about these reports. . . . AHP DEFENDANTS
did not even report many of these cases to FDA.
AHP DEFENDANTS should have regarded the 1994-1995 reports of
VHD as an early warning signal of what was likely to

6

happen in the U.S.  However, because of its desire to
conceal safety problems and not derail the exponential
growth of Pondimin or the pending approval of Redux . .
.APH DEFENDANTS chose . . . not to report the VHD problem
(to FDA). . . . AHP DEFENDANTS mischaracterized many of
the reports as "non-serious" and did not report them to
FDA, to the Plaintiffs, or to the Plaintiffs' prescribing
physicians.
AHP DEFENDANTS did not change the Pondimin labeling
regarding PPH because to do so would have threatened its
diet drug business.

[AHP marketing programs] contained false and misleading
information and/or material ommisions about the true
risks . . .and the supposed benefits. . . .  The text of
one AHP document . . . falsely states "Redux is a safe
and effective product." [AHP, through its sales force]
fed false and misleading information and/or material
omissions about the true risks . . . [to doctor
advocates, whose job it was to promote AHP's products to
other physicians].

The "best case" for the company's sales was if consumers
were unaware of the risk of PPH and physicians chose not
to enlighten them.

AHP DEFENDANTS [knew of problems] but decided to say
nothing of those problems to physicians, patients or the
FDA. . . . AHP DEFENDANTS withheld critical information
from the FDA Advisory Committee, the Plaintiffs, and the
Plaintiffs' physicians, about the risks of VHD.

AHP DEFENDANTS, knowing that its market research
demonstrated that [a black box] warning would destroy
sales, adamantly resisted the black box warning requested
by FDA and any other restrictions on the use of Redux.

[An internal memo authored by an AHP executive stated]
"[E]very attempt will be made to ensure that no 'Black
Box' warnings, restrictions of use or negative statements
find their way into the Redux labeling."
[After a leading researcher in the field of PPH appeared on
the Today Show expressing concerns, he was threatened by
AHP's medical director and] never again spoke to the
media about his concerns about the safety of Redux.

AHP made matters worse by having its paid consultants
write an editorial minimizing the risk of PPH with diet
drugs which was published in the New England Journal of

7

Medicine without the authors disclosing that they were
paid consultants for the company.  In addition, AHP
DEFENDANTS sent out a misleading press release regarding
the IPPHS study, which also tended to downplay the risk
of PPH.

AHP did everything in its power to obscure the true scope
of the problem from the Mayo Clinic, Interneuron, FDA and
the public as long as it could.
. . .  [R]ather than coming clean about the knowledge in its
possession for about two years, AHP continued to withhold
that information and feigned total surprise [when a Mayo
Clinic physician reported to AHP that she had discovered
VHD in a number of patients who had been using Fen-Phen].

Worried about a leak of information to the general public
and prescribing physicians, AHP DEFENDANTS tried to keep
IPI (its business partner) in the dark about the Mayo
Clinic findings. . . .AHP [attempted] to conceal
information about the VHD problem from even its own
business partner for as long as possible.

AHP DEFENDANTS continued their policy of hiding
information about the risk of VHD even up to the day that
FDA told the company that it should take Pondimin and
Redux off the market.

[Pursuant to a conspiracy between] AHP DEFENDANTS and
ECKERD, false and fraudulent information was provided to
pharmacists, consumers, and prescribing physicians about
the risks and supposed benefits of these drugs.  Upon
information and belief, and in furtherance of the
conspiracy, AHP Defendants and Eckerd supplied false and
misleading marketing and promotional material and
programs to unsuspecting pharmacists and prescribing
physicians. . . .  Eckerd [agreed that it would] take "no
action. including but not limited to telephone calls or
written communication to physician providers or
Pharmacies regarding specific prescriptions, that [would]
adversely affect utilization" [of AHP's products].. . . .
Upon information and belief, [certain "patient education
programs" and "provider education programs" worked on by
Eckerd and Wyeth-Ayerst jointly] provided false and
misleading information about [the drugs).
Eon agreed and conspired with various pharmacies and/or AHP
Defendants to ensure that the off-label combination use
of these drugs could be timely provided to consumers,
pharmacists, and prescribing physicians who were
deliberately misled as to the safety and efficacy of these drugs

8

specific allegations of concerted, unabated fraud and concealment
by the manufacturer defendants from virtually everyone, including
pharmacists, no factual basis can be drawn from plaintiffs'
complaint for their entirely general and conclusory charge that
these "defendants" knew or had reason to know of the risks.  Even
assuming, then, for the sake of argument, that under Mississippi
law, there exists the possibility that a viable cause of action
could be maintained against a pharmacist who had knowledge of risks
associated with a particular drug or drugs which he failed to
disclose to his customer, the plaintiffs herein have failed to
properly plead such a claim.[6]  Accordingly, the court concludes
that the pharmacy defendants have indeed been fraudulently joined.

The court also concludes, for the reasons assigned by Judge
William H. Barbour in _Beatrice Johnson et al. v. Parke-Davis. A_

>        Eon agreed and conspired with other manufacturers to
> ensure that an adequate supply of phentermine could be
> delivered to consumers, pharmacists, and prescribing
> physicians who were deliberately misled as to the safety
> and efficacy of these drugs, and to the dangers of
> prescribing phentermine in combination with fenfluramine.
> . . . In furtherance of this conspiracy, prescribing
> physicians, consumers, and pharmacists were fed false and
> misleading information about fen-phen and Redux. . . .

[6]    _See_ _Badon v. RJR Nabisco Inc._, 2000 WL 1159424, No. 98-
30942, at *7 (5th Cir. Aug. 16, 2000) (noting that plaintiffs'
conspiracy allegations were "entirely general" and did not allege
"any particular or specific activity, agreement, or state of mind
on the part of either the in-state distributor defendants. . . .
while as to the other defendants the amended complaint is replete
with innumerable specific allegations of particular, identified
activities, . . . .").

9

10/31/2001 17:17 FAX 601 949 4555    BUTLER SNOW XTIIS.    @011

Division of The Warner-Lambert Co., et al., No. 3:00CV315BN (S.D.
Miss. July 21, 2000) (involving the drug Rezulin), that the sales
representative defendants have also been fraudulently joined.

Accordingly, for the foregoing reasons, it is ordered that
plaintiffs' motion to remand is denied.

SO ORDERED this 25th day of September, 2000.

UNITED STATES DISTRICT JUDGE.

10



**KAYE SCHOLER** LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| In re REZULIN LITIGATION ) | CASE NO. CV 03-1647-R(RZx) |
| JACKIE BARLOW; CARMA DEKOVEN; ERNESTINE DELAFONT, ZOE EGGER-MUKARVTZ; and SAMUEL GODBOULDT, | [~~PROPOSED~~] ORDER DENYING PLAINTIFFS' MOTION FOR REMAND |
| Plaintiffs, | |
| v. | |
| WARNER-LAMBERT CO.; PFIZER INC.; JERROLD OLEFSKY; McKESSON CORP., et al. | |
| Defendants. | |

Defendants removed this action from state court to this Court alleging diversity jurisdiction. Defendants asserted that Jerrold Olefsky and McKesson Corp., both of whom are California residents, were fraudulently joined. Plaintiffs moved to remand to state court. The motions came on for hearing by the Court on April 21, 2003.

Having considered the motions and other documents in support of and in opposition to the motions, having heard the arguments of counsel, and being fully advised in the matter, the Court denies the motion.

The Court finds that Dr. Jerrold Olefsky ("Dr. Olefsky"), a patent-holder and clinical investigator, owed no legal duty to any of the plaintiffs, and, therefore, there is no possibility that the plaintiffs can prove a cause of action against Dr. Olefsky. Thus, Dr. Olefsky must be disregarded for purposes of determining federal diversity

1

D104762.WPD                                    [PROPOSED] ORDER

Exhibit B Page 16

1    jurisdiction.

2        The Court further finds that there is no possibility that plaintiffs could prove a

3    cause of action against McKesson, an entity which distributed this FDA-approved

4    medication to pharmacists in California.  Pursuant to comment k of the Restatement

5    (Second) of Torts Section 402A and California law following comment k, a

6    distributor of a prescription drug is not subject to strict liability.

7        Accordingly, this Court has diversity jurisdiction over each of these actions.

8    The motion to remand is denied.

9        IT IS SO ORDERED.

10   Dated: April 28, 2003

                                    **MANUEL  L.  REAL**

                                    _____
                                    MANUEL L. REAL
                                    UNITED STATES DISTRICT JUDGE

13   Submitted by:

14

15   O'DONNELL & SHAEFFER LLP
     633 West Fifth Street, Suite 1700
16   Los Angeles, California 90071
     Telephone:  (213) 532-2000
17   Facsimile:  (213) 532-2020

18   KAYE SCHOLER LLP .
     1999 Avenue of the Stars
19   Los Angeles, California 90067
     Telephone:  (310) 788-1000
     Facsimile:  (310) 788-1200

20   By: _____
21       Robert Barnes
22   Attorneys for  Defendants
     WARNER-LAMBERT COMPANY and PFIZER INC.

23

24

25

26

27

28

                                    2
33104743.WPD                        [PROPOSED] ORDER

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**In re: BAYCOL PRODUCTS LITIGATION**          **MDL No. 1431**
                                                **(MJD)**

This Document also relates to:

Mary A. Smith v. Bayer Corporation et al.,      Case No. 02-139

---

Hugo N. Gerstl, Law Offices of Hugo N. Gerstl and Associates, for and on behalf of Plaintiff.

Peter Sipkins, Dorsey & Whitney, Philip S. Beck, Ada L. Hoeflich and Tarek Ismail, Barlit Beck Herman Palenchar & Scott, Susan A. Weber and Sara J. Gourley, Sidley Austin Brown & Wood and Richard K. Dandrea, Eckert Seamens Cherin & Mellott, LLC, for and on behalf of Bayer Corporation.

---

This matter is before the Court upon Plaintiff Smith's motion to remand. Bayer Corporation ("Bayer") opposes the motion on the basis that Plaintiff has fraudulently joined Longs Drug Stores, Inc. ("Longs Drug") in an effort to defeat diversity jurisdiction.

Background

Plaintiff filed her Complaint in California state court on September 7, 2001. In her Complaint, Plaintiff asserted claims of products liability and negligence against Longs Drug. Plaintiff is a citizen of California. Defendant Bayer Corporation is an Indiana corporation, with its principal place of business in Pennsylvania. Defendant Longs Drug has its principal place of business in California. Thus, for purposes of diversity jurisdiction, the parties do not dispute that Longs Drug is a citizen of California.

On October 11, 2001, Defendant Bayer Corporation filed a notice of removal

1

with the United States District Court, Northern District of California. In its removal petition, Bayer asserts that Plaintiff failed to state a cause of action against Longs Drug, and that the court therefore had jurisdiction over Plaintiff's Complaint based on diversity of citizenship under 28 U.S.C. § 1332(a). Bayer contends that fraudulently joined defendants will not defeat diversity jurisdiction.

On October 12, 2001, Plaintiff filed a First Amended Complaint in California state court. In the Amended Complaint, Plaintiff withdrew her products liability claim against Longs Drug, adding a professional negligence claim in its place.

**Standard**

Remand to state court is proper if the district court lacks subject matter jurisdiction over the asserted claims. 28 U.S.C. § 1447(c). In reviewing a motion to remand, the court must resolve all doubts in favor of a remand to state court, and the party opposing remand has the burden of establishing federal jurisdiction by a preponderance of the evidence. In re Business Men's Assurance Co. of America, 992 F.2d 181, 183 (8th Cir. 1983)(citing Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3rd Cir. 1987) cert. dismissed 484 U.S. 1021 (1988)).

Fraudulently joined defendants will not defeat diversity jurisdiction. Ritchey v. Upjohn Drug Company, 139 F.3d 1313, 1318 (9th Cir. 1998). "Fraudulent joinder exists if, on the face of plaintiff's state court pleadings, no cause of action lies against the resident defendant." Anderson v. Home Insurance Company, 724 F.2d 82, 84 (8th Cir. 1993). Dismissal of fraudulently joined non-diverse defendants is appropriate. Wiles v. Capitol Indemnity Corp., 280 F.3d 868, 871 (8th Cir. 2002).

Initially, in determining the propriety of remand, the Court must review plaintiff's pleading at the time of the petition for removal. Pullman Co. v. Jenkins, 305

2

U.S. 534, 537 (1939). In addition, a plaintiff may not amend her complaint in order to state a claim against a nondiverse defendant in order to divest the federal court of jurisdiction. Cavallini v. State Farm Mutual Auto-Insurance Co., 44 F.3d 256, 265 (Fed. Cir. 1995). See also, Henderson v. Shell Oil Co., 173 F.2d 840, 842 (8th Cir. 1949)(federal court has power to amend petition after removal, but such power does not extend to elimination of jurisdictional defects present in the state court action). The Court will thus look to the original Complaint to determine whether Longs Drug has been fraudulently joined.[1]

If a plaintiff fails to state a cause of action against a non-diverse defendant, and the failure is obvious according to settled rules of law of the state in which the action was brought, the joinder of the non-diverse defendant is deemed to be fraudulent. Ritchey v. Upjohn Drug Company, 139 F.3d 1313, 1318 (9th Cir. 1998). Bayer argues that a retail pharmacy cannot be held strictly liable for injuries caused by a defective drug pursuant to California law. Murphy v. E.R. Squibb & Sons, Inc., 40 Cal.3rd 672, 675-681 (1985). It appears that Plaintiff does not dispute this principle, as is evidenced by the fact that Plaintiff attempted to amend her Complaint to withdraw this cause of action against Longs Drug. In addition, Bayer argues that Plaintiff's negligence claim against Longs Drug also fails to state a claim. The Complaint alleges that Longs Drug was negligent in failing to provide adequate warnings of the dangers posed by Baycol and that Longs Drug concealed specific knowledge concerning Baycol from Plaintiff. Complaint ¶ 35. However, the Complaint further states that Longs Drug dispensed

---

[1] Plaintiff provides the Court no authority for her argument that the Court should look to pleadings filed in state court after the case has been removed. Because Plaintiff attempted to file the First Amended Complaint in state court, after the case was removed to federal court, the filing was ineffective. Also, as an answer has been filed, Plaintiff must now seek leave of the Court to file the First Amended Complaint. Plaintiff has not done so, however.

3



Baycol to Plaintiff on March 24, 2001. Id. ¶¶ 15 and 16. The Complaint further alleges
that prior to May 21, 2001, Bayer did not advise physicians and drugstores of the
problems it encountered with Baycol, and did not advise physicians or drugstores that
the 0.8 mg. dosage of Baycol was potentially dangerous, even fatal. Id. ¶ 13. Thus, the
allegations in the Complaint defeat her negligence claim against Longs Drug, as a
defendant cannot be held liable for failing to warn of unknown risks. Merrill v.
Navegar, Inc., 26 Cal.4th 465, 485 (2001).

Based on the above, the Court finds that Bayer has met its burden of showing
that Longs Drug was fraudulently joined, as it is obvious based on the face of the
Complaint, that no cause of action was alleged against Longs Drug.[2]

Accordingly, IT IS HEREBY ORDERED that:

1.    Plaintiffs' Motion to Remand is DENIED.

2.    Defendant Longs Drug Stores, Inc. is DISMISSED.

Date: May 24, 2002

                                        _____/s/_____
                                        Michael J. Davis
                                        United States District Court

---

[2]Because the Court finds that Longs Drug was fraudulently joined, Longs Drug's failure to consent to
removal does not render the petition to remove ineffective. Emrich v. Touche Ross & Co., 846 F.2d 1190,
1193, n. 1 (9th Cir. 1988); Seagate Technology LLC v. Delia China Express Int'l Corp. Ltd., 169 F.Supp. 2d
1146, 1152, (N.D. Cal. 2001).

4

1  FARLEY J. NEUMAN, ESQUIRE - State Bar #100021
   JAMES F. HETHERINGTON, ESQUIRE - State Bar #151331
2  JENKINS GOODMAN NEUMAN & HAMILTON LLP
   417 Montgomery Street, 10th Floor
3  San Francisco, California  94104
   Telephone:  (415) 705-0400
4  Facsimile:  (415) 705-0411

5  Attorneys for Defendant McKESSON CORPORATION

6

7

8                    UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11 JEANNE DIANE COLLINS, as              )  Case No. _____
   surviving statutory beneficiary for the )
12 wrongful death of FLOYD COLLINS,      )
                                         )  DEFENDANT MCKESSON
13         Plaintiff,                     )  CORPORATION'S CONSENT TO
                                         )  REMOVAL OF ACTION
14      v.                               )
                                         )
15                                       )
   BAYER CORPORATION, a                  )
16 Pennsylvania corporation, aka, BAYER  )
   HEATLHCARE and BAYER AG ; and         )
17 MCKESSON CORPORATION, a               )
   Delaware Corporation ; JOHN DOES 1-   )
18 100 and ABC CORPORATIONS 1-100,       )

19         Defendants.

20

21

22

23

24

25

26

27

28
   ─────────────────────────────────────────
              NOTICE OF CONSENT TO REMOVAL

1          TO THE CLERK OF THE NORTHERN DISTRICT OF CALIFORNIA:

2                 Defendant McKesson Corporation hereby provides notice of its consent

3     to the removal of the above entitled action from the Superior Court of the State of

4     California, County of San Francisco, to the United States District Court for the

5     Northern District of California.

6

7
8     DATED: March 26, 2008          JENKINS GOODMAN NEUMAN
                                     & HAMILTON LLP

9
                                     By: _____

10

11                                         FARLEY J. NEUMAN
                                           Attorneys for Defendant, McKESSON
12                                         CORPORATION

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                         -2-
                          NOTICE OF CONSENT TO REMOVAL

1        **PROOF OF SERVICE**

2

3    STATE OF CALIFORNIA    )
                            )  ss
4    COUNTY OF LOS ANGELES )

5

6        I am employed in the County of Los Angeles, State of California. I am

7    over the age of 18 years and not a party to the within action. My business address is

8    555 West Fifth Street, Suite 4000, Los Angeles, California 90013-1010.

9        On March 27, 2008, I served the foregoing document described as

10   **DEFENDANT BAYER CORPORATION'S NOTICE OF REMOVAL** on all

11   interested parties in this action as follows (or as on the attached service list):

12

13   Robert F. Clarke, Esq.              Farley J. Newman, Esq.
     Lowell W. Finson, Esq.             James F. Hetherington, Esq.
14   Phillips & Associates              Jenkins Goodman Newman & Hamilton
     3030 N. 3rd St., Ste. 1100         LLP
15   Phoenix, AZ 85012                  417 Montgomery Street, 10th Floor
                                        San Francisco, CA 94104

16

17   ☒   (VIA U.S. MAIL) I served the foregoing document(s) by U.S. Mail, as follows:
     I placed true copies of the document(s) in a sealed envelope addressed to each
18   interested party as shown above. I placed each such envelope with postage thereon
     fully prepaid, for collection and mailing at Sidley Austin LLP, Los Angeles,
19   California. I am readily familiar with Sidley Austin LLP's practice for collection and
     processing of correspondence for mailing with the United States Postal Service.
20   Under that practice, the correspondence would be deposited in the United States
     Postal Service on that same day in the ordinary course of business.

21       I declare under penalty of perjury under the laws of the United States of
     America that the above is true and correct.
22

23       Executed on March 27, 2008, at Los Angeles, California.

24

25                              Deborah J. Kelly

26

27

28   _____
                         PROOF OF SERVICE

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO.)

**I.(a) PLAINTIFFS**
JEANNE DIANE COLLINS, as surviving statutory beneficiary for the wrongful death of FLOYD COLLINS

E-filing

**DEFENDANTS**
BAYER CORPORATION, aka BAYER HEALTHCARE and BAYER AG; MCKESSON CORPORATION; JOHN DOES 1-100; ABC CORPORATIONS 1-100

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Allegheny, PA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Robert F. Clarke (SBN 79881)
PHILLIPS & ASSOCIATES
3030 North Third Street, Suite 1100
Phoenix, Arizona 85012
Tel: (602) 288-1632

ATTORNEYS (IF KNOWN)
Catherine Valerio Barrad (SBN 168897)
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013-1010
Tel: (213) 896-6000

**II. BASIS OF JURISDICTION**   (PLACE AN "X" IN ONE BOX ONLY)

☐ 1. U.S. Government Plaintiff
☐ 2. U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** PLACE AN 'X' IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only) AND ONE BOX FOR DEFENDANT

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN**   (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT**   (PLACE AN "X"IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☒ 365 Personal Injury -Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | **PERSONAL PROPERTY** | ☐ 640 RR & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Satellite TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing | ☐ 535 Death Penalty | | ☐ 871 IRS-Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 445 Amer w/ disab - Empl | ☐ 555 Prison Condition | | | ☐ 890 Other Statutory Actions |
| | ☐ 446 Amer w/ disab - Other | | | | |

**VI. CAUSE OF ACTION** (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)
28 U.S.C. § 1441; 28 U.S.C. § 1332 - Diversity

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S)**
**IF ANY**   PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

**IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)**
(PLACE AND "X" IN ONE BOX ONLY)   ☒ SAN FRANCISCO/OAKLAND   ☐ SAN JOSE

DATE
3/26/08

SIGNATURE OF ATTORNEY OF RECORD

ORIGINAL

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44
### Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.    (a) Plaintiffs - Defendants. Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.    Jurisdiction. The basis of jurisdiction is set forth under Rule 8(a). F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.    Residence (citizenship) of Principal Parties. This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.    Origin. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

V.    Nature of Suit. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

VI.    Cause of Action. Report the civil statute directly related to the cause of action and give a brief description of the cause.

VII.    Requested in Complaint. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.    Related Cases. This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases. Date and Attorney Signature.

Date and Attorney Signature. Date and sign the civil cover sheet.

American LegalNet, Inc.
www.FormsWorkflow.com

## PROOF OF SERVICE

STATE OF CALIFORNIA          )
                             ) ss
COUNTY OF LOS ANGELES )

      I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is 555 West Fifth Street, Suite 4000, Los Angeles, California 90013-1010.

      On March 27, 2008, I served the foregoing document described as **CIVIL COVER SHEET** on all interested parties in this action as follows (or as on the attached service list):

| Robert F. Clarke, Esq. | Farley J. Newman, Esq. |
|---|---|
| Lowell W. Finson, Esq. | James F. Hetherington, Esq. |
| Phillips & Associates | Jenkins Goodman Newman & Hamilton |
| 3030 N. 3rd St., Ste. 1100 | LLP |
| Phoenix, AZ 85012 | 417 Montgomery Street, 10th Floor |
| | San Francisco, CA 94104 |

☒   (VIA U.S. MAIL) I served the foregoing document(s) by U.S. Mail, as follows: I placed true copies of the document(s) in a sealed envelope addressed to each interested party as shown above. I placed each such envelope with postage thereon fully prepaid, for collection and mailing at Sidley Austin LLP, Los Angeles, California. I am readily familiar with Sidley Austin LLP's practice for collection and processing of correspondence for mailing with the United States Postal Service. Under that practice, the correspondence would be deposited in the United States Postal Service on that same day in the ordinary course of business.

      I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

      Executed on March 27, 2008, at Los Angeles, California.

_Deborah J. Kelly_
Deborah J. Kelly

**PROOF OF SERVICE**

1  Catherine Valerio Barrad (SBN 168897)
   Christine K. Son (SBN 223190)
2  J. P. Pecht (SBN 233708)
   SIDLEY AUSTIN LLP
3  555 West Fifth Street, Suite 4000
   Los Angeles, California  90013-1010
4  Telephone: (213) 896-6000
   Facsimile:  (213) 896-6600
5  cbarrad@sidley.com
   cson@sidley.com
6  jpecht@sidley.com

7  Attorneys for Defendant
   Bayer Corporation

8

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

MAR 2 7 2008

GORDON PARK-LI, Clerk

BY: _____
                    Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| JEANNE DIANE COLLINS, as surviving statutory beneficiary for the wrongful death of FLOYD COLLINS,<br><br>                    Plaintiff,<br><br>          v.<br><br>BAYER CORPORATION, a Pennsylvania corporation, aka, BAYER HEALTHCARE and BAYER AG; and MCKESSON CORPORATION, a Delaware corporation; JOHN DOES 1-100 and ABC CORPORATIONS 1-100,<br><br>                    Defendants. | ) Case No. CGC-07-470556<br>)<br>) Complaint Filed:  December 31, 2007<br>)<br>)<br>)<br>)<br>) **ANSWER AND AFFIRMATIVE AND/OR**<br>) **SEPARATE DEFENSES OF DEFENDANT**<br>) **BAYER CORPORATION TO**<br>) **COMPLAINT FOR DAMAGES**<br>)<br>)<br>) **DEMAND FOR JURY TRIAL**<br>)<br>)<br>)<br>)<br>) |

1

## GENERAL DENIAL

2  Pursuant to section 431.30 of the California Code of Civil Procedure, defendant

3  Bayer Corporation denies generally and specifically each and every allegation contained in

4  plaintiff's unverified Complaint ("Complaint") that relates or is directed to Bayer Corporation, or

5  any alleged agent, servant, partner, aider and abettor, co-conspirator, joint venturer, officer, director,

6  or employee of Bayer Corporation, and further denies that plaintiff or the plaintiff's decedent were

7  injured or damaged in any way or amount or are entitled to any relief whatsoever against Bayer

8  Corporation. To the extent that the Complaint contains allegations referring to Bayer Corporation

9  and other entities collectively as "Defendants," "Defendant," or "Bayer," Bayer Corporation is not

10  answering the Complaint on behalf of any entity other than Bayer Corporation and is not answering

11  allegations that are directed at any entity other than Bayer Corporation.

12

## SEPARATE AND ADDITIONAL DEFENSES

13  In setting forth the following separate and additional defenses, Bayer Corporation

14  does not concede that it bears the burden of proof or persuasion as to any of them.

15

### FIRST DEFENSE

16

#### (Failure to State a Cause of Action)

17  1.  Plaintiff's Complaint, and each and every count contained therein, fails to

18  state a cause of action or claim upon which relief can be granted against Bayer Corporation.

19

### SECOND DEFENSE

20

#### (Statute of Limitations)

21  2.  Some or all of plaintiff's claims are barred by applicable statutes of limitations

22  and/or statutes of repose.

23

### THIRD DEFENSE

24

#### (Laches, Waiver and Estoppel)

25  3.  Plaintiff's claims against Bayer Corporation are barred, in whole or in part, by

26  laches, waiver and/or estoppel.

27

28

- 1 -

**FOURTH DEFENSE**

**(Failure to Mitigate Damages)**

4.     Plaintiff's claims are barred, in whole or in part, by plaintiff's failure to mitigate alleged damages.

**FIFTH DEFENSE**

**(Third Party Negligence)**

5.     If plaintiff and/or plaintiff's decedent sustained the injuries or incurred the expenses as alleged, which is expressly denied, said injuries or expenses were directly and proximately caused by the negligence or fault of parties other than Bayer Corporation, whether named or unnamed in plaintiff's Complaint, over whom Bayer Corporation had no supervision or control and for whose actions and omissions Bayer Corporation has no legal responsibility. Plaintiff's recovery, if any, therefore should be apportioned in accordance with the applicable law.

**SIXTH DEFENSE**

**(Intervening or Superseding Cause)**

6.     The injuries and damages claimed by plaintiff and/or plaintiff's decedent, if any, resulted from an intervening or superseding cause and/or causes, and any act or omission on the part of Bayer Corporation was not the proximate and/or competent producing cause of such alleged injuries and damages.

**SEVENTH DEFENSE**

**(Learned Intermediary Doctrine)**

7.     The claims in the Complaint are barred in whole or in part by the learned intermediary doctrine. Trasylol® is a prescription pharmaceutical which was available only upon the prescription of a licensed physician and is indicated for use by physicians only during certain surgical procedures.

**EIGHTH DEFENSE**

**(Pre-existing or Subsequent Conditions)**

8.     The injuries or damages allegedly sustained by plaintiff and/or plaintiff's decedent, if any, were caused, in whole or in part, by pre-existing or subsequent physical, medical,

- 2 -

1   and/or physiological conditions, for which Bayer Corporation has no legal responsibility.

2   **NINTH DEFENSE**

3   **(State of the Art)**

4        9.    Plaintiff's Complaint fails to state a claim upon which relief can be granted

5   against Bayer Corporation in that the methods, standards, and techniques utilized with respect to the

6   design, manufacture, marketing and sale of Trasylol®, including but not limited to adequate

7   warnings and instructions with respect to the product's use included in the product's package insert

8   and other literature, conformed to the applicable state of the art. Trasylol®, including its labeling

9   approved by the United States Food and Drug Administration, complied with the state of scientific

10  and medical knowledge available at the time of its design, testing, manufacture, distribution,

11  marketing, and sale. Plaintiff's recovery accordingly is barred.

12  **TENTH DEFENSE**

13  **(Restatement (Second) of Torts § 402A, comment k)**

14       10.    Plaintiff's claims are barred as a matter of law pursuant to Restatement

15  (Second) of Torts § 402A, comment k.

16  **ELEVENTH DEFENSE**

17  **(Compliance with Law and Regulations)**

18       11.    The prescription drug Trasylol ® complied with the applicable product safety

19  regulations promulgated by the United States Food and Drug Administration. Compliance with such

20  regulations demonstrates that due care was exercised with respect to the design, manufacture,

21  testing, marketing and sale of this prescription drug, and that it was neither defective nor

22  unreasonably dangerous. Plaintiff's recovery accordingly is barred.

23  **TWELFTH DEFENSE**

24  **(Federal Preemption)**

25       12.    Plaintiff's claims are preempted, in whole or in part, by federal law pursuant

26  to the Supremacy Clause of the United States Constitution by reasons of the federal government's

27  regulation of the manufacturing, testing, marketing, sale and labeling of prescription drugs. To the

28  extent the requirements of California or other state law are in conflict with applicable provisions of

1  federal law, the requirements of state law are preempted and invalid.

2  ## THIRTEENTH DEFENSE

3  ### (Unforeseeable Alteration or Misuse)

4      13.    If plaintiff and/or plaintiff's decedent sustained the injuries or incurred the

5  expenses as alleged, which is expressly denied, said injuries or expenses were caused by the

6  unforeseeable alteration, improper handling, or other unforeseeable misuse of the prescription drug

7  Trasylol®. Plaintiff's recovery accordingly is barred.

8  ## FOURTEENTH DEFENSE

9  ### (Right to Petition Government)

10      14.    Any claims by plaintiff relating to alleged communications with regulatory

11  agencies of the United States government are barred in whole or in part by operation of applicable

12  law, including First and Fourteenth Amendment rights to petition the government.

13  ## FIFTEENTH DEFENSE

14  ### (Unavoidable Circumstances)

15      15.    The alleged injuries and damages, if any, were the result of unavoidable

16  circumstances that could not have been prevented by any person, including Bayer Corporation.

17  ## SIXTEENTH DEFENSE

18  ### (Failure to Join Indispensable Parties)

19      16.    Plaintiff's Complaint fails to join indispensable parties necessary for the just

20  adjudication of this matter.

21  ## SEVENTEENTH DEFENSE

22  ### (Not Defective or Unreasonably Dangerous)

23      17.    Plaintiff's claims are barred because Trasylol® was neither defective nor

24  unreasonably dangerous in its design, manufacture, or marketing and was reasonably safe and

25  reasonably fit for its intended use. The warnings and instructions accompanying Trasylol® at the

26  time of the occurrence or injuries alleged by plaintiff were legally adequate warnings and

27  instructions.

28

1

**EIGHTEENTH DEFENSE**

2

**(Failure to State a Claim for Costs)**

3      18.     Plaintiff's Complaint fails to state a claim against Bayer Corporation upon

4    which relief can be granted as to costs, pre-judgment interest or attorneys' fees.

5

**NINETEENTH DEFENSE**

6

**(Barred by First Amendment)**

7      19.     Plaintiff's claims are barred in whole or in part because the commercial

8    speech relating to Trasylol® was not false or misleading and is protected under the First Amendment

9    of the United States Constitution and the applicable state constitution.

10

**TWENTIETH DEFENSE**

11

**(Primary Jurisdiction of FDA)**

12      20.     Plaintiff's claims regarding warnings and labeling are barred in whole or in

13    part by the doctrine of primary jurisdiction, in that the United States Food and Drug Administration

14    is charged under law with determining the content of warnings and labeling for prescription drugs.

15

**TWENTY-FIRST DEFENSE**

16

**(Exclusive Regulation by FDA)**

17      21.     Plaintiff cannot state a claim with regard to warnings and labeling for

18    prescription drugs because the remedy sought by plaintiff is subject to the exclusive regulation of the

19    United States Food and Drug Administration.

20

**TWENTY-SECOND DEFENSE**

21

**(Abstention)**

22      22.     This Court should abstain from adjudicating plaintiff's claims relating to

23    warnings and labeling in deference to the interpretation of regulations relating to prescription drug

24    labeling by the United States Food and Drug Administration.

25

**TWENTY-THIRD DEFENSE**

26

**(No Detrimental Reliance)**

27      23.     Plaintiff and/or plaintiff's decedent did not detrimentally rely on any labeling,

28    warnings or information concerning Trasylol®.

- 5 -

1

**TWENTY-FOURTH DEFENSE**

**(Not Reasonably Foreseeable)**

24.    Plaintiff and/or plaintiff's decedent's alleged injuries and damages, if any, were the result of an idiosyncratic reaction which Bayer Corporation could not reasonably foresee.

**TWENTY-FIFTH DEFENSE**

**(Settlement)**

25.    To the extent plaintiff has settled or will settle with any person or entity with respect to the injuries asserted in the Complaint, the liability of Bayer Corporation, if any, should be reduced accordingly.

**TWENTY-SIXTH DEFENSE**

**(Plaintiff's Claims Speculative)**

26.    Plaintiff and/or plaintiff's decedent's claims of injury and claims for damages are speculative.

**TWENTY-SEVENTH DEFENSE**

**(No Private Cause of Action)**

27.    Plaintiff's claims purportedly asserted under statutes and regulations relating to prescription drugs fail, in whole or in part, because those statutes and regulations do not contain or create any private cause of action.

**TWENTY-EIGHTH DEFENSE**

**(Failure to Plead Fraud with Particularity)**

28.    Plaintiff's purported allegations of fraud, deceit, statutory fraud, misrepresentation, suppression, omission, concealment and deception are not pleaded with particularity.

**TWENTY-NINTH DEFENSE**

**(Failure to State a Claim for Fraud)**

29.    Plaintiff's Complaint fails to state a claim for fraud, deceit, statutory fraud, misrepresentation, concealment, suppression, omission and/or deception.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## THIRTIETH DEFENSE

### (Failure to State a Claim for Punitive Damages)

30.    Plaintiff's Complaint fails to state a claim upon which relief can be granted for punitive or exemplary damages.

## THIRTY-FIRST DEFENSE

### (Punitive Damages Barred For Failure To Produce Evidence)

31.    Bayer Corporation denies any conduct for which punitive or exemplary damages could or should be awarded and denies that plaintiff has produced evidence sufficient to support or sustain the imposition of punitive or exemplary damages against Bayer Corporation pursuant to the applicable standard(s) of proof.

## THIRTY-SECOND DEFENSE

### (Imposition of Punitive Damages Would Be Unconstitutionally Vague and/or Overbroad)

32.    Permitting recovery of punitive or exemplary damages in this case would be unconstitutionally vague and/or overbroad and would violate Bayer Corporation's constitutional rights as secured by the Fifth and Seventh Amendments to the United States Constitution, would violate Bayer Corporation's rights to due process and equal protection under the Fourteenth Amendment of the United States Constitution and the prohibition against excessive fines in the United States Constitution, and would contravene other provisions of the United States, California, and any other applicable State constitution.

## THIRTY-THIRD DEFENSE

### (Imposition of Punitive Damages Would Be Unconstitutional – Procedural Safeguards)

33.    Plaintiff cannot recover punitive or exemplary damages against Bayer Corporation because such an award, which is penal in nature, would violate Bayer Corporation's constitutional rights under the United States Constitution and any applicable State constitution, unless Bayer Corporation is afforded the same procedural safeguards as are criminal defendants, including but not limited to the right to avoid self incrimination, the right to forego production and disclosure of incriminating documents, and the right to the requirement of a level of proof beyond a reasonable doubt.

- 7 -

1

**THIRTY-FOURTH DEFENSE**

2

**(Imposition of Punitive Damages Would Be Unconstitutional – Interstate Commerce)**

3          34.       Any imposition of punitive or exemplary damages in this case against Bayer

4   Corporation would contravene the Commerce Clause of the United States Constitution, in that such

5   an award would constitute, if imposed, an undue and unreasonable burden on interstate commerce.

6

**THIRTY-FIFTH DEFENSE**

7

**(Procedures for Imposition of Punitive Damages Would Be Unconstitutional)**

8          35.       Plaintiff's claim for punitive or exemplary damages is barred by the United

9   States Constitution and any applicable State constitution on grounds including the following:

10       (a)       the procedures pursuant to which punitive or exemplary damages may be awarded fail

11                 to provide specific standards for the amount of the award against Bayer Corporation;

12       (b)       the procedures pursuant to which punitive or exemplary damages may be awarded

13                 result in the imposition of different penalties for the same or similar acts;

14       (c)       the procedures pursuant to which punitive or exemplary damages may be awarded

15                 permit the imposition of punitive or exemplary damages in excess of the maximum

16                 criminal fine for the same or similar conduct; and

17       (d)       the procedures pursuant to which punitive or exemplary damages may be awarded are

18                 subject to no predetermined limit, such as a maximum multiple of compensatory

19                 damages or a maximum amount, on the amount of punitive or exemplary damages

20                 that a jury may impose, thus providing no protection against multiple awards for the

21                 same course of conduct.

22

**THIRTY-SIXTH DEFENSE**

23

**(Punitive Damages – Standards or Limitations)**

24          36.       With respect to plaintiff's demand for punitive or exemplary damages, Bayer

25   Corporation specifically incorporates by reference any and all standards or limitations regarding the

26   determination and enforceability of punitive or exemplary damages awards under California Civil

27   Code sections 3294 and 3295 or other applicable State law.

28

1

## THIRTY-SEVENTH DEFENSE

2

### (Punitive Damages Unavailable)

3      37.    No act or omission of Bayer Corporation was intentional, reckless, willful

4  misconduct, wanton, reckless, and/or with actual malice, oppression, and/or fraud as defined in

5  California Civil Code section 3294, or done with reckless disregard for the safety of plaintiff, or with

6  conscious disregard and indifference to the rights, safety and welfare of plaintiff, or evidencing that

7  entire want of care which would raise the presumption of conscious indifference to the

8  consequences, and therefore any award of punitive or exemplary damages is barred.  Bayer

9  Corporation asserts any statutory or judicial protection from punitive or exemplary damages that is

10  available under the applicable law, and any award of punitive or exemplary damages is barred.

11

## THIRTY-EIGHTH DEFENSE

12

### (Punitive Damages Barred by Compliance with Industry Standards)

13      38.    The claim for punitive or exemplary damages against Bayer Corporation

14  cannot be sustained under California law because, in all respects pertinent to this action, Bayer

15  Corporation complied with applicable industry standards and did not engage in a deliberate course of

16  conduct which knowingly endangered those using Trasylol®.

17

## THIRTY-NINTH DEFENSE

18

### (Punitive Damages Exceed Legally Permissible Limits)

19      39.    Plaintiff's Complaint seeks damages in excess of those permitted by law.

20  Bayer Corporation asserts any statutory or judicial protection from punitive or exemplary damages

21  that is available under the applicable law, and any award of punitive or exemplary damages is

22  barred.

23

## FORTIETH DEFENSE

24

### (Conduct Not Misleading, Unfair or Deceptive)

25      40.    Plaintiff's Complaint fails to state a claim for misleading or unfair advertising

26  or for deceptive business practices under California Business & Professions Code sections 17200

27  and 17500 because Bayer Corporation's labeling and advertising for Trasylol® was not misleading,

28  unfair or deceptive.

- 9 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FORTY-FIRST DEFENSE

### (Conduct Not Unlawful)

41.     Plaintiff's Complaint fails to state a claim for misleading or unfair advertising or for deceptive business practices under California Business & Professions Code sections 17200 and 17500 because Bayer Corporation's labeling and advertising for Trasylol® was not unlawful.

## FORTY-SECOND DEFENSE

### (Barred by Due Process Protections)

42.     Plaintiff's claims are barred in whole or in part because California Business & Professions Code sections 17200 and 17500 are insufficiently definite to provide adequate or fair notice of the conduct proscribed, in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 7 of the California Constitution.

## FORTY-THIRD DEFENSE

### (Unconstitutional Burden On Interstate Commerce)

43.     Plaintiff's claims are barred in whole or in part because California Business & Professions Code sections 17200 and 17500 unconstitutionally burden interstate business practices relating to prescription drugs, which are heavily regulated by the FDA.

## FORTY-FOURTH DEFENSE

### (Collateral Source)

44.     To the extent plaintiff is seeking recovery for benefits entitled to be received or actually received from any other source of injuries alleged in the Complaint, such benefits are not recoverable in this action under applicable law.

## FORTY-FIFTH DEFENSE

### (Standing)

45.     Plaintiff is not the real party in interest or lacks the capacity and/or standing to bring the claims asserted in the Complaint.

**FORTY-SIXTH DEFENSE**

**(No Loss of Money or Property)**

46.     Plaintiff and/or plaintiff's decedent have not sustained an ascertainable loss of money or property because of the alleged use of Trasylol®.

**FORTY-SEVENTH DEFENSE**

**(No Actual Injury)**

47.     Plaintiff and/or plaintiff's decedent have not suffered any actual injury or damages because of the alleged use of Trasylol® as sold by Bayer Corporation.

**FORTY-EIGHTH DEFENSE**

**(No Personal Jurisdiction)**

48.     Bayer Corporation preserves all objections and defenses relating to personal jurisdiction.

**FORTY-NINTH DEFENSE**

**(Contributory Negligence or Fault and/or Comparative Negligence or Fault)**

49.     The acts and omissions of plaintiff and/or other persons or entities, whether named or unnamed in plaintiff's Complaint, over whom Bayer Corporation had no supervision or control and for whose actions and omissions Bayer Corporation has no legal responsibility, caused and/or contributed to the alleged damages, thereby barring or reducing the amount of recovery under the doctrine of contributory negligence or fault and/or comparative negligence or fault.  Plaintiff's recovery, if any, therefore is barred or should be reduced and/or apportioned in accordance with applicable law.

**FIFTIETH DEFENSE**

**(Net Benefits)**

50.     Plaintiff's claims are barred because Trasylol® provides net benefits for a class of patients.

**FIFTY-FIRST DEFENSE**

**(Incorporate Defenses of Other Defendants)**

51.     Bayer Corporation adopts and incorporates by reference all defenses pleaded

- 11 -

1 │ or to be pleaded by other defendants except to the extent that they are inconsistent with Bayer

2 │ Corporation's defenses pleaded in this Answer.

3 │ ### FIFTY-SECOND DEFENSE

4 │ ### (No Waiver of Defenses)

5 │ 52. Bayer Corporation reserves the right to amend its answer and separate and

6 │ additional defenses to conform to such facts as may be revealed in discovery or otherwise.

7 │

8 │ WHEREFORE, Bayer Corporation prays for judgment as follows:

9 │ 1. That plaintiff takes nothing by way of her Complaint or any of its purported

10 │    claims for relief;

11 │ 2. That the Complaint be dismissed with prejudice in its entirety;

12 │ 3. That judgment be entered in favor of Bayer Corporation;

13 │ 4. That Bayer Corporation be awarded its cost of suit incurred in this action,

14 │    including attorneys' fees; and

15 │ 5. That Bayer Corporation be awarded such other and further relief as the Court

16 │    may deem just and proper.

17 │

18 │ ### JURY DEMAND

19 │ Bayer Corporation respectfully requests that a jury try the issues in this matter.

20 │ Dated: March 26, 2008

SIDLEY AUSTIN LLP
Catherine Valerio Barrad
Christine K. Son
J. P. Pecht

By: _____
J. P. Pecht
Attorneys for Defendant Bayer Corporation

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA )

3
                   ) ss

4
COUNTY OF LOS ANGELES )

5

       I am employed in the County of Los Angeles, State of California. I am over the

6
age of 18 years and not a party to the within action. My business address is 555 West Fifth

7
Street, Suite 4000, Los Angeles, California 90013-1010.

8
       On March 27, 2008, I served the foregoing document described as **ANSWER**

9
**AND AFFIRMATIVE AND/OR SEPARATE DEFENSES OF DEFENDANT BAYER**

10
**CORPORATION TO COMPLAINT FOR DAMAGES** on all interested parties in this action

11
as follows (or as on the attached service list):

12
Robert F. Clarke, Esq.             Farley J. Newman, Esq.

13
Lowell W. Finson, Esq.           James F. Hetherington, Esq.
Phillips & Associates             Jenkins Goodman Newman & Hamilton LLP

14
3030 N. 3rd St., Ste. 1100       417 Montgomery Street, 10th Floor
Phoenix, AZ 85012              San Francisco, CA 94104

15

16
☒     (VIA U.S. MAIL) I served the foregoing document(s) by U.S. Mail, as follows: I placed
true copies of the document(s) in a sealed envelope addressed to each interested party as shown

17
above. I placed each such envelope with postage thereon fully prepaid, for collection and
mailing at Sidley Austin LLP, Los Angeles, California. I am readily familiar with Sidley Austin

18
LLP's practice for collection and processing of correspondence for mailing with the United
States Postal Service. Under that practice, the correspondence would be deposited in the United

19
States Postal Service on that same day in the ordinary course of business.

20
       I declare under penalty of perjury under the laws of the United States of America
that the above is true and correct.

21
       Executed on March 27, 2008, at Los Angeles, California.

22

23

24
Deborah J. Kelly

25

26

27

28

**PROOF OF SERVICE**